705 P.2d 78

**Leonard Leroy LONG,
Plaintiff-Appellant,**

v.

**James Elmer HENDRICKS and
Blanche H. Hendricks,
Defendants-Respondents.**

No. 14392.

Court of Appeals of Idaho.

July 30, 1985.

Petition for Review Denied
Nov. 20, 1985.

John B. Kugler, Pocatello, for plaintiff-appellant.

Gary T. Dance of Merrill & Merrill, Pocatello, for defendants-respondents.

## ON DENIAL OF PETITION FOR REHEARING

This opinion supersedes our prior opinion issued February 8, 1985, which is hereby withdrawn.

SWANSTROM, Judge.

Leonard Leroy Long brought this suit to recover for injuries sustained in an accident caused by the defendant James Hendricks. Trial was to the court, which found in favor of Long. The court awarded him more than $21,000 in damages. Dissatisfied with the result, Long has appealed, raising several issues. These issues may be grouped into three broad categories—the procedural aspects of the trial, the findings of fact by the court and the award of damages. We affirm in part, vacate in part and remand for modification.

On March 28, 1975, Long went on a service call for his employer Big O Tires in Bannock County. The call required him to change a tire on a pickup disabled on the interstate highway. The pickup was parked on the right side of the highway, partially on the pavement but completely outside the fog line. Long positioned the service truck to the right of the pickup in the borrow pit beside the highway. He engaged the "maxi brakes" and set the outriggers to stabilize the service truck. Using the boom on the service truck, Long then raised the pickup and began to change the tire.

Suddenly, as he stood directly in front of the pickup, Long heard the blast from a car's horn. Looking up, he saw a car careening off the highway towards the service truck. The car, however, swerved at the last moment and smashed into the rear of the pickup. The pickup, in turn, struck Long and hurled him over 100 feet through the air, rendering him unconscious. A short time later, he came to. Although able to walk about on his own, he was dazed and could not do much more. Long went to the hospital for tests that day and the next day. Still later he was admitted to the hospital. He had no broken bones, but suffered from severe headaches and backaches, loss of hearing and numbness in one leg. Long was in the hospital ten days.

The following facts are shown by the undisputed testimony of Long, his former manager at Big O Tires, and other persons close to Long. For the next three and a half years following the accident, Long worked sporadically at Big O Tires. Due to the pain he suffered, he often missed work and, even when he did work, could not perform his usual tasks. Long was eventually laid off in connection with a reduction of work force. Less senior personnel, however, were retained because Long's work had degenerated. In essence, his health prevented him from carrying out his assigned duties. Aside from a part-time job pumping gas, he was without work for twenty months. He continues to be in pain and is being treated by a chiropractor.

Following completion of the one-day bench trial, Long moved to amend his pleadings to conform to the evidence, primarily in regard to the amount of damages requested. No order denying this motion appears in the record. On November 14, the Hendrickses gave notice of their intention to present additional evidence. Long objected, but the court allowed the evidence and gave Long the opportunity for rebuttal. The court then took the case under advisement and in due course issued

a memorandum decision which announced a "total judgment in favor of the plaintiff in the sum of $19,027.85." Long moved to amend the findings to include damages for loss of wages and requested that the court make certain specific findings on the record. Long also filed a cost bill which included attorney fees. The court denied the request for findings but added $2,000 to the judgment for lost wages. Judgment was entered and Long appealed.

The Hendrickses tendered the judgment amount to the court and the clerk of the court declared the judgment satisfied pursuant to I.C. § 10-1115. Long objected to this declaration upon the ground that since an appeal was pending the judgment amount was not finally set. The Hendrickses also moved to strike the attorney fees from the cost bill. This motion was granted after a hearing and the Hendrickses then tendered an amount for the costs to the clerk. Again the judgment was declared satisfied. Long then filed an amended notice of appeal.

## PROCEDURAL ASPECTS

Long filed this suit in December 1978 in Bannock County, which is in the Sixth Judicial District. The Hendrickses moved to change venue to the county of their residence, Madison, which is in the Seventh Judicial District. Long stipulated to the change and Judge Burton was assigned to hear the case. The Hendrickses moved to disqualify Burton under I.R.C.P. 40(d)(1). After the motion was granted, Judge Thomas was assigned to hear the case. Long moved to change venue back to Bannock County for the convenience of the witnesses. Although the Hendrickses opposed the motion, it was granted. In the order changing venue, Judge Thomas manifested a willingness to continue with the case and he set trial for October 9, 1980. The administrative judge of the Sixth Judicial District ordered Judge Thomas to continue with the case pursuant to I.R.C.P. 40(e)(2) and reset the trial to begin October 31, 1980.

■ Long first contends that the administrative judge of the Sixth Judicial District erred in having Boyd Thomas, a judge of the Seventh Judicial District, sit on the case. Our review of the record, however, reveals that the courts involved fully complied with the procedures outlined in former rule 40(e), I.R.C.P., then in effect. The administrative judges acted within the authority of I.C. §§ 1-704 and 1-907 in assigning Judge Thomas to the trial of this case in Bannock County.

■ Long next contends the trial court erred in overruling his objections to portions of the deposition of a Dr. Bryner which was admitted at trial. The challenged portions were those in which Dr. Bryner referred to the records of another doctor, Dr. Shaw. Shaw had treated Long both before and after the accident but was deceased at the time Dr. Bryner examined Long. Long contends that Dr. Bryner's testimony, relating information from Dr. Shaw's records, was inadmissible hearsay and should have been stricken from the deposition. We disagree. Our Supreme Court has held that

"when an expert is allowed to testify to a valuation [of property] opinion which is in part based on facts which would normally be hearsay and inadmissible as independent evidence, the trial court may in its discretion allow the expert to state such facts for the purpose of showing the basis of the opinion."

*Keller Lorenz Co. v. Insurance Associates Corp.*, 98 Idaho 678, 684, 570 P.2d 1366, 1372 (1977) (*quoting State v. Wineberg*, 444 P.2d 787, 794 (Wash.1968)). Although this rule has not yet been extended to medical expert opinions in Idaho, we believe that it should be. Indeed there is a strong case law trend to allow a medical expert witness to both give his opinion and state the facts upon which that opinion was based even though he relied in part upon the records of another medical expert. *See Ankeny v. Grunstead*, 551 P.2d 1027 (Mont.1979) (reports of one doctor were not objectionable upon the ground of hearsay when used by another doctor for the limit-

ed purpose of advising a patient of his condition and proposed future care); *Lewis v. Baker*, 413 P.2d 400 (Or.1966), *overruled in part on other grounds, McEwen v. Ortho Pharmaceutical Corp.*, 528 P.2d 522 (Or.1974); *see also* C. McCORMICK, McCORMICK ON EVIDENCE § 15 (E. Cleary 3d ed. 1984); FED.R.EVID. 703.

In the present case, Dr. Bryner both examined Long and reviewed Dr. Shaw's records of his treatment of Long. He stated the facts revealed by Shaw's records and then stated his own opinion concerning Long's current condition. We believe this was proper under the modern rule. *Keller* clearly supports the trial court's decision to admit this testimony. Accordingly, we hold the trial court acted properly in overruling Long's objections.[1]

■ The third issue raised by Long was whether the trial court erred by permitting the Hendrickses to produce additional evidence after the close of the case. The decision whether to permit such additional evidence "rests within the sound discretion of the trial court ... and in the absence of abuse of that discretion the trial court's action will not be reversed." *Robert V. De Shazo & Associates v. Farm Management Services, Inc.*, 101 Idaho 154, 155, 610 P.2d 109, 110 (1980) (citation omitted). Generally, a "party seeking to reopen must show some reasonable excuse, such as oversight, inability to produce the evidence, or ignorance of the evidence." *Bank of Idaho v. Colley*, 103 Idaho 320, 324, 647 P.2d 776, 780 (Ct.App.1982). Here, the Hendrickses' counsel claimed the need to reopen the case because he had insufficient time to prepare for the testimony of Dr. West, an expert called by Long. Dr. West examined Long eleven days before the trial. The Hendrickses' attorney, who had apparently learned of this witness only three days before trial, objected to allowing his testimony. Long's attorney, on the other hand, urged that his client would not have a fair hearing without this witness. He said that if defendant's coun-

sel "wants to have a continuance for seeking contrary independent medical [sic], I would not object." The court then ruled that if it allowed the testimony of Long's expert to come in it would permit the Hendrickses "to have an independent medical examination and be allowed to later open up the case for that purpose ...." Fourteen days after the trial the Hendrickses gave notice of their intent to call their own medical expert to rebut Dr. West's testimony. At this time briefing in the case had not been completed and the trial court had not decided the case. After some delays, a hearing was convened to take the additional evidence. Then, to afford Long and his expert an opportunity to present rebuttal evidence, a final hearing was held. Under these circumstances we hold the trial court did not abuse its discretion by allowing the Hendrickses to reopen the case.

■ The final procedural issue raised by Long concerns the satisfaction of judgment entered by the clerk of the court after Long filed his notice of appeal. He contends that the clerk lacks the power to declare the judgment satisfied after a notice of appeal is filed. The duty of the clerk to "satisfy [the] judgment upon the records of [the] court" is set out in I.C. § 10–1115. This duty is not abrogated by the filing of a notice of appeal by the judgment creditor. Furthermore, we can envision no hardship upon the judgment creditor by the performance of this duty, where, as here, the judgment creditor has not accepted the funds paid into court in satisfaction of the judgment. Should the judgment be vacated or modified, the mere fact that a judgment has been declared "satisfied" by the clerk of the court cannot benefit or harm either party. The error, if any, was therefore harmless.

## FINDINGS OF FACT

Long argues that the trial court erred in failing to make certain findings of fact as he requested. Following the filing of the

---

1. Our ruling is consistent with rule 703 of the Idaho Rules of Evidence, adopted by the Idaho Supreme Court, effective July 1, 1985. The rule is identical to Fed.R.Evid. 703.

court's memorandum opinion, Long moved to amend it to add these particular findings:

(1) that he was unable to continue in his regular occupation as a result of his injuries;

(2) that the injury to his back resulted in impairment of twenty-four percent of the whole man;

(3) that he has incurred pain and suffering since the accident;

(4) that his injuries are permanent;

(5) that he lost wages between December 15, 1978 and August 18, 1980 as a result of the accident; and

(6) that he will continue to incur loss of wages as a result of the accident.

The court denied the motion insofar as it related to making additional findings, although the court did make an additional award for loss of wages.

■ It is axiomatic that "the trial court must make findings upon each and every material issue arising from the pleadings, upon which proof is offered." *Perry Plumbing Co. v. Schuler*, 96 Idaho 494, 497, 531 P.2d 584, 587 (1975). The court here found that Long had been injured and awarded him damages. These included amounts for medical expenses, loss of hearing, other injuries, pain and suffering (general damages) and loss of wages.

The findings of the trial court were expressed in its memorandum decision and in a supplemental order. Most of the "findings," however, are merely statements summarizing the testimony of Long and that of the medical experts. It is therefore extremely difficult to determine what *facts* the court found from the evidence it discussed. The court recited the differing opinions of the medical experts without indicating which it believed or found most credible.

■ The trial court did find, in its supplemental order, that Long "incurred a loss of wages as a result of the accident and his injuries, and that the sum of $2,000.00 should be awarded." If the court intended this sum to be the damages for Long's loss

of wages between the date of the accident, March 28, 1975, and the date when he lost his job at the tire store, December 15, 1978, we could uphold the award as being within the proof of damages for that period of time. The evidence showed that Long was absent from work for one period of six weeks and that he missed other days due to his injuries. However, if the court intended the figure to cover loss of wages from date of the accident to the date of trial, the award is clearly inadequate as we later discuss. Because the findings are inadequate on the matter of damages, we find it necessary to remand the case for further proceedings.

■ Long also requested a specific finding that the injury to his back resulted in impairment of twenty-four percent of the whole man. Such a finding could have been made upon medical testimony presented in support of Long's claim. However, because of differing expert testimony, the court also had other choices and, in fact, may have been unable to precisely define the extent of the injuries. We find no error in its refusal to adopt the requested finding.

■ The trial court further declined to make a requested finding that Long "has incurred pain and suffering since the accident" and "that his injuries are permanent." We know of no reason shown by the record for the court not to have made some specific findings on these points. However, by awarding general damages of $8,000 the court implicitly found there were injuries and pain and suffering. We can reach no other conclusion. It is also implicit, from the court's award of $8,000 for partial hearing loss, that the court believed that injury was permanent. We hold that failure to make an explicit general finding, "that [Long's] injuries are permanent," was not error.

■ Long also requested a finding that he "will continue to incur a loss of wages as a result of the accident." From the record, we conclude that Long failed to prove the extent to which his future earn-

ing power has been impaired as a result of the accident. It is true that Long proved he was unable to continue in his former employment servicing heavy duty tires, but he did not show he will be unable, in his present occupation or otherwise, to earn a comparable income.

We will discuss Long's other requested findings later in this opinion when we discuss the damage issues. Long also identifies several errors in the findings of the trial court. None of these errors, however, has any bearing upon the issues on appeal. We hold that the errors were harmless.

## DAMAGES

We now turn to the heart of this appeal—the question of damages. Long first contends that an award for lost wages in the sum of $2,000 was inadequate. Uncontradicted testimony in the record indicates that Long was laid off on December 15, 1978 due to the degeneration of his work resulting from his injuries. The district judge's finding on this point is not clear. He said, "It seems that his employer, Big O Tire, sold out in the fall of 1978 and plaintiff could not continue on that job." If the judge meant that Long lost his job because Big O Tire sold the business, the finding is clearly erroneous. The manager and operator of the tire store where Long last worked testified that the reason Long had been laid off was "LeRoy's work had degenerated." He "had become much slower than he was before [the accident] ... and was hurting." Unless the trial judge finds that the store manager's testimony was not credible, it appears clear from the record that Long lost his job because of health problems resulting from the accident. If the trial court is to conclude otherwise, such conclusion must be supported by adequate findings that are, in turn, supported by the evidence.

At the time of his discharge from the tire store, Long was receiving $1,200 per month salary. It is undisputed that Long made efforts to find new employment. He sought work at several businesses and through the Department of Employment and State Rehabilitation offices. Long testified that he turned down no employment, but was unable to find a new full-time job, which he was capable of performing, until August 18, 1980. He earned $2,900 during this period pumping gas part-time. Had he not been injured, therefore, he could have earned $24,000 during those twenty months. Thus, Long's evidence tended to prove he lost wages of $21,000 (the wages he would have earned, less the wages he actually earned). We believe that the evidence in the record and the findings made by the trial court do not justify an award of only $2,000 for lost wages. Accordingly, we remand the case to reconsider, and to make more particular findings on, the issue of lost wages. We remind the trial court that the Hendricksfes, as the parties who caused the injuries and thence the damages through loss of wages, bore the burden of proving that damage reasonably could have been further mitigated. *Clark v. International Harvester Co.*, 99 Idaho 326, 581 P.2d 784 (1978); *Eliopulos v. Kondo Farms, Inc.*, 102 Idaho 915, 643 P.2d 1085 (Ct.App.1982). On remand the judge should make particular findings as to the amount of any wages lost by Long prior to December 15, 1978, as well as to the amount of wages lost between December 15, 1978 and the date of trial.

The trial court awarded Long $2,527.85 in medical expenses incurred as a result of the accident. Long had submitted proof of other expenses for which no award was made. The court made no findings to explain why the expenses were not allowed. These expenses were shown by exhibits numbered C, D, E and J. Generally, the reasonable value of all necessary medical expenses may be recovered. *See* D. DOBBS, HANDBOOK ON THE LAW OF REMEDY § 8.1 at 543 (1973). Because there were no findings made as to these items of expense, we cannot determine whether the court's failure to include them was oversight or as a result of a determination to exclude them. Accordingly, on remand the trial court should include the

**80**

expenses or show the basis for their rejection.

Finally, we have reviewed the award for general damages. Medical experts offered differing opinions as to the extent of Long's disabilities and as to the source of those disabilities. The award of the trial court is supported by the record and we will not overturn it on appeal.

The final issue raised by Long is whether the trial court erred in striking his claim for attorney fees from the cost bill. He argues that the Hendrickses' objections to the memorandum of costs were not timely. The memorandum of costs was filed September 30 and the motion to strike the attorney fees was filed December 3. Objections to the memorandum of costs must be made within ten days of its service. I.R.C.P. 50(d)(6). A failure to timely object, however, does not automatically entitle the prevailing party to the attorney fees requested. An award of attorney fees under I.C. § 12–121 is discretionary with the trial court. *See Odziemek v. Wesely,* 102 Idaho 582, 634 P.2d 623 (1981). Lack of an objection does not preclude the court from exercising its discretion in deciding whether to award attorney fees. I.R.C.P. 54(d)(1)(D); *Operating Engineers Local Union 370 v. Goodwin Construction Company of Blackfoot,* 104 Idaho 83, 656 P.2d 144 (Ct.App.1982).

The record in the present case, however, presents some difficulties. In a minute entry the court stated that "Attorney fees will require a finding that this Court will decline to make at this time." The finding referred to by the court is one which is now required by I.R.C.P. 54(e)(1) before an award of attorney fees is proper—that the case be "brought, pursued or defended frivolously, unreasonably or without foundation." Rule 54(e) applies only to cases filed on or after March 1, 1979. The present case was filed in December 1978. Therefore, the court could have applied the standards of rule 54(e) in its discretion, *Ladd v. Coats,* 105 Idaho 250, 668 P.2d 126 (1983), but it was not required to. The language used in the minute entry indicates that the court might have felt *bound* to apply those standards. We have held in a similar case that this would require a remand for a new determination of whether to apply rule 54(e) in the court's discretion. *See Barnes v. Hinton,* 103 Idaho 619, 651 P.2d 553 (Ct.App.1982). On remand the trial court should reconsider its order denying attorney fees, making a clear record as to whether it is choosing to apply the standards of rule 54(e) in reaching its ultimate decision on the request for attorney fees.

The judgment is affirmed in part, vacated in part and remanded for further proceedings consistent with this opinion. Costs to appellant, Long. No attorney fees awarded on appeal.

WALTERS, C.J., and BURNETT, J., concur.