793 P.2d 1223

**Leonard Leroy LONG,
Plaintiff–Appellant,**

v.

**James Elmer HENDRICKS and
Blanche H. Hendricks,
Defendants–Respondents.**

No. 17635.

Supreme Court of Idaho.

May 29, 1990.

John B. Kugler, Pocatello, for plaintiff-appellant.

Merrill & Merrill Chartered, Pocatello, for defendants-respondents.   D. Russell Wight, argued.

JOHNSON, Justice.

This is a personal injury case that has been the subject of a prior appeal in which

the decision was rendered by the Court of Appeals (*Long I*). *Long v. Hendricks*, 109 Idaho 73, 705 P.2d 78 (Ct.App.1985). The present appeal followed the remand by the Court of Appeals in *Long I* and the entry of a supplemental judgment by the trial court. On this appeal we again assigned the case to the Court of Appeals. The Court of Appeals affirmed the supplemental judgment of the trial court in all respects. *Long v. Hendricks*, 114 Idaho 157, 754 P.2d 1194 (Ct.App.1988). We granted review of the decision of the Court of Appeals at the request of Long. Following the issuance of our initial opinion in March 1989, we granted rehearing.

We have reviewed and considered the briefs, the record, the opinions of the Court of Appeals in *Long I* and in this appeal. We have also heard and considered the arguments of counsel. Considering all of these, we concur with the decision of the Court of Appeals except in one respect. We reverse the supplemental judgment of the trial court to the extent that it did not award Long interest on the amount of the additional medical expenses and on the amount of the original judgment up to the date of the tender of the amount of that judgment. In all other respects we affirm the supplemental judgment of the trial court. As to all of the issues except one on which we affirm the trial court, we do so on the basis of the opinion of the Court of Appeals. In affirming the trial court's denial of post judgment interest on the amount of the original judgment, we depart somewhat from the rationale of the Court of Appeals.

## I.

### LONG IS NOT ENTITLED TO POST JUDGMENT INTEREST ON THE ORIGINAL JUDGMENT.

■ The trial court refused to award Long post judgment interest on the amount of the original judgment. The trial court's rationale for this decision was that the notice of tender of the amount of the judg-ment was an "unconditional tender" as provided for in I.C. § 10–1115 (1979). This notice of tender stated that the clerk of the court was authorized to release the funds tendered "upon the presentation of a Satisfaction of Judgment duly executed by [Long]." The Court of Appeals concluded that Long had failed to establish that he would have been prejudiced by accepting the amount tendered. 114 Idaho at 160, 754 P.2d at 1197. We conclude that he would have been prejudiced in his right to appeal, if he had accepted the amount tendered, regardless of whether he had signed a satisfaction of judgment. For this reason we view this issue in a different light than either the trial court or the Court of Appeals.

We focus not on the condition imposed by the Hendrickses, but instead on the fact that Long chose to appeal the denial of a new trial. We conclude that when he chose to appeal and not to accept the amount of the original judgment that was tendered, he gave up the right to claim post judgment interest.

Following the trial, Long filed a motion for an additur or, in the alternative, for a new trial. The trial court denied this motion. The denial of the motion was one of the issues Long raised in *Long I*. If the trial court or the Court of Appeals had granted Long a new trial, he might have received less as a result of the new trial than he did in the first trial.

Long chose to forego the collection of the judgment he received and to appeal the denial of a new trial. Whether the tender by the Hendrickses had been made pursuant to I.C. § 10–1115 or in the form in which it was made, Long could not have accepted it and still have pursued his appeal.

I.C. § 10–1115 provides a procedure for a judgment debtor to satisfy a judgment. By this procedure the judgment creditor is guaranteed full payment of the judgment, and the judgment debtor is given an opportunity to clear the title to property that would be subject to a judgment lien. *Ra-*

*dioear Corp. v. Crouse,* 97 Idaho 501, 505, 547 P.2d 546, 550 (1975). In *Radioear* this Court held that the depositing of funds with the clerk by the judgment debtor was not inconsistent with the judgment debtor's right to move to vacate the judgment. Where the judgment debtor not only deposits funds with the clerk, but also authorizes the release of the funds to the judgment creditor, the judgment debtor may not then appeal the judgment. *Bob Rice Ford, Inc. v. Donnelly,* 98 Idaho 313, 315, 563 P.2d 37, 39 (1977). Here, we are presented with an appeal by a judgment creditor instead of a judgment debtor following a tender that was purportedly pursuant to I.C. § 10–1115.

Since the Hendrickses conditioned their tender by requiring Long personally to sign a satisfaction of judgment, the tender did not conform to the procedure provided in I.C. § 10–1115. However, the fact that it did not is irrelevant to our consideration here. In fact, the clerk did sign a satisfaction of judgment pursuant to I.C. § 10–1115.

The tender put Long to the choice of either appealing or accepting the amount tendered. He could not have done both. His acceptance of the tendered amount would have foreclosed his appeal.

In *Bechtel v. Evans,* 10 Idaho 147, 77 P. 212 (1904), this Court stated principles that are germane to the issue presented here. There, a judgment had been entered. Defendant contested some items in the cost bill which plaintiff had submitted, and some of the costs were disallowed by the trial court. The judgment debtor then paid to the clerk of the court the full amount of the judgment, including the awarded costs, plus accrued interest on both the amount recovered and costs. That sum, in turn, was paid to the judgment creditor. The attorney for the judgment creditor signed a satisfaction of the entire amount of the judgment which was duly entered upon the docket. The judgment creditor subsequently appealed the order granting costs. The judgment debtor moved to dismiss the

appeal on the grounds that the judgment had been satisfied, and therefore the judgment creditor could not prosecute an appeal. This Court agreed and said:

It seems to us, as a general proposition of law, that a successful party should not be allowed to gather in and enjoy the fruits of his judgment and thereafter prosecute an appeal and complain of error committed against him.

Upon reason and principle, however, it appears to us that the test should be this: If the party has collected his judgment, and in seeking to gain more by the prosecution of an appeal thereby incurs the hazard of eventually recovering less, then his appeal should be dismissed. If, on the other hand, the appeal is from such an order or judgment as that he could in no event recover a less favorable judgment and that he incurs no hazard of ever receiving less than the judgment already collected by him, we see no objection to the prosecution of his appeal. (*Cowles v. Dickenson,* 8 Cow. 328; *Knapp v. Brown,* 45 N.Y. 207; *Alexander v. Alexander,* 104 N.Y. 643, 10 N.E. 37.)

... This is not a case where a new trial could be ordered.

10 Idaho at 149–50, 77 P. at 212–13 (citations omitted).

Here, Long sought a new trial and rejected the tendered amount. He had a right to do so. However, by doing so he gave up his right to interest on the amount of the original judgment from the date of the tender. The Hendrickses had made the amount of the judgment available to Long, if he chose to accept it. The choice to let the tendered amount remain unclaimed was his. The gamble he was taking was that he would be successful in his appeal and obtain a larger judgment on retrial. Allowing him to seek this result by appealing and not accepting the amount tendered is inconsistent with allowing him to collect interest on the amount tendered. Allowing him to collect post judgment interest here would make it impossible for a judgment

debtor to avoid payment of interest on a judgment where the judgment creditor sought a new trial.

The rationale for this conclusion is that if Long had accepted the tendered amount and had been allowed to continue with his appeal, he might eventually have been determined to be entitled to less than what he had received. In that case, at the time the subsequent judgment was entered he might not have had the amount he received from the Hendrickses and might have been insulated from their efforts to recover the overpayment.

■ When a judgment debtor wishes to cut off the accrual of post judgment interest, the tender of the amount of the judgment is sufficient. If by appealing the judgment creditor is not taking the risk of receiving less than the amount tendered, the judgment creditor may accept the tendered amount and continue with the appeal. If, however, as in this case, the judgment creditor appeals the denial of a new trial and takes the risk of receiving less than the tendered amount, it is unfair to require the judgment debtor to pay post judgment interest after the date of the tender. The judgment debtor has no effective way of eliminating the obligation for post judgment interest except by the tender. Having chosen to appeal and reject the tender, the judgment creditor should not be heard to complain about the lack of post judgment interest.

## II.

## LONG IS ENTITLED TO INTEREST ON THE ADDITIONAL MEDICAL EXPENSES FROM THE DATE OF THE ORIGINAL JUDGMENT.

■ The Court of Appeals affirmed the decision of the trial court that Long was not entitled to interest from the date of the original judgment on the amount of the additional loss of wages and on the amount of the additional medical expenses that were awarded on remand. 114 Idaho at

160–62, 754 P.2d at 1197–99. We concur with the decision of the Court of Appeals with regard to interest on the additional loss of wages for the reasons given in their opinion. We disagree, however, with the denial of interest on the amount of the additional medical expenses.

The different treatment given by the Court of Appeals in *Long I* to the question of additional loss of wages and to addition medical expenses on remand is dispositive. As to the consideration of additional loss of wages the Court of Appeals said:

> Long's evidence *tended to prove* he lost wages of $21,000 (the wages he would have earned, less the wages he actually earned). We believe that the evidence in the record and the findings made by the trial court do not justify an award of only $2,000 for lost wages. Accordingly, we remand the case to reconsider, and to make more particular findings on, the issue of lost wages.... On remand the judge should make particular findings as to the amount of any wages lost by Long prior to December 15, 1978, as well as to the amount of wages lost between December 15, 1978 and the date of trial.

109 Idaho at 79, 705 P.2d at 84 (emphasis added) (citations omitted).

We agree with the analysis of the Court of Appeals in its opinion in the current appeal that it cannot be said that, as a matter of law that the amount of the additional loss of wages "was ascertainable prior to the proceedings on remand." 114 Idaho at 162, 754 P.2d at 1199. However, the same is not true with regard to the additional medical expenses.

■ In *Long I* the Court of Appeals addressed the subject of additional medical expenses as follows:

> The trial court awarded Long $2,527.85 in medical expenses incurred as a result of the accident. Long had submitted proof of other expenses for which no award was made. The court made no findings to explain why the expenses were not allowed. These expenses were

shown by exhibits numbered C, D, E and J. Generally, the reasonable value of all necessary medical expenses may be recovered. Because there were no findings made as to these items of expense, we cannot determine whether the court's failure to include them was oversight or as a result of a determination to exclude them. Accordingly, on remand *the trial court should include the expenses or show the basis for their rejection.*

109 Idaho at 79–80, 705 P.2d at 84–85 (citation omitted) (emphasis added).

The effect of this language was to direct the trial court to modify the judgment by awarding the additional medical expenses, unless the trial court could "show the basis for their rejection." The amount of the additional medical expenses was liquidated. The trial court awarded these additional expenses to Long in the supplemental judgment. Under the authorities cited by the Court of Appeals, interest should have been awarded on the amount of the additional medical expenses from the date of the original judgment.

### III.

### CONCLUSION.

The supplemental judgment of the trial court is affirmed, except as interest on the amount of additional medical expenses. The case is remanded to the trial court for entry of a judgment including interest on the additional medical expenses from the date of the original judgment.

Costs to appellant.

No attorney fees on appeal.

BAKES, C.J., and BOYLE and McDEVITT, JJ., concur.

BISTLINE, Justice, dissenting.

A general rule seems to be developing in this Court that the more serious the injury, the poorer are the chances for being fully compensated, which is stated having in mind the Court's opinion in *Frank v. Bunker Hill Co.*, 117 Idaho 790, 792 P.2d 815 (1988) (addendum filed 1990), and now in the case of Long in his action against Mr. & Mrs. Hendricks, concerning which I now write. Today's majority opinion is substituted for the Court's previous opinion which has held sway since March 30, 1989, but a petition for rehearing was granted, and the case was reargued in February of this year. Today's opinion withdraws the previous opinion, and is substituted in its place. A majority can do that. But the majority cannot withdraw my previous opinion, nor can it withdraw the opinion authored by Justice Huntley which also became my opinion when I joined it, as was my right to do.

The facts giving rise to Mr. Long's injuries and resultant damages were ably set forth by Judge Swanstrom in *Long v. Hendricks*, 109 Idaho 73, 705 P.2d 78 (Ct.App. 1985), and were succinctly enough stated to bear repeating here:

On March 28, 1975, Long went on a service call for his employer Big O Tires in Bannock County. The call required him to change a tire on a pickup disabled on the interstate highway. The pickup was parked on the right side of the highway, partially on the pavement but completely outside the fog line. Long positioned the service truck to the right of the pickup in the borrow pit beside the highway. He engaged the 'maxi brakes' and set the outriggers to stabilize the service truck. Using the boom on the service truck, Long then raised the pickup and began to change the tire.

Suddenly, as he stood directly in front of the pickup, Long heard the blast from a car's horn. Looking up, he saw a car careening off the highway towards the service truck. The car, however, swerved at the last moment and smashed into the rear of the pickup. The pickup, in turn, struck Long and hurled him over 100 feet through the air, rendering him unconscious. A short time later, he

came to. Although able to walk about on his own, he was dazed and could not do much more. Long went to the hospital for tests that day and the next day. Still later he was admitted to the hospital. He had no broken bones, but suffered from severe headaches and backaches, loss of hearing and numbness in one leg. Long was in the hospital ten days.

The following facts are shown by the undisputed testimony of Long, his former manager at Big O Tires, and other persons close to Long. For the next three and a half years following the accident, Long worked sporadically at Big O Tires. Due to the pain he suffered, he often missed work and, even when he did work, could not perform his usual tasks. Long was eventually laid off in connection with a reduction of work force. Less senior personnel, however, were retained because Long's work had degenerated. In essence, his health prevented him from carrying out his assigned duties. Aside from a part-time job pumping gas, he was without work for twenty months. He continues to be in pain and is being treated by a chiropractor.

*Long v. Hendricks (Long I)*, 109 Idaho at 75, 705 P.2d at 80.[1] Judge Swanstrom's published opinion concluded that the trial court had not satisfactorily explained its failure to award Long $21,000 in lost wages, and accordingly directed that the issue be reconsidered on remand. 109 Idaho at 79, 705 P.2d at 84. Similarly, Judge Swanstrom mentioned an apparent failure in regard to medical expenses shown by four exhibits, noting that "the trial court should include the expenses or show the basis for their rejection." 109 Idaho at 79–80, 705 P.2d at 84–85.

The district court on remand did enter a supplemental judgment following a hearing

on remand, which has already been discussed by Justice Huntley and myself in the opinions which we wrote. The supplemental judgment awarded the lost wages which the trial court had apparently overlooked, and did include with it the omitted medical expenses, respectively $21,100.00 and $899.79. *Long v. Hendricks*, 114 Idaho 157, 159, 754 P.2d 1194, 1196 (Ct.App. 1988). As mentioned in what I wrote earlier, the district court did not allow any interest on the long-delayed award for loss of wages, saying that could be attended to by the Court of Appeals which had declared in the first place that there should be a judgment for loss of wages. That was a strange stance taken by the district judge, but because of the circumstances it was understandable.

The Court of Appeals in the ensuing opinion authored by Chief Judge Walters made two significant holdings which precipitated Long's petitioning this Court for review. In his opinion, Judge Walters concluded: (1) that Long was not entitled to interest on his initial judgment, and (2) that he was not entitled to interest which ordinarily would have accrued on the loss of wages, had judgment been entered when it should have been. The initial judgment should have been for $21,027.85 (initial damage award) plus $21,100.00 (wages), and $899.79 (omitted medical) and accruing interest on both items at the statutory rate. I am hard pressed to find even the slightest justification for depriving Leonard Long of the interest which ordinarily would be accruing on an amount totaling just over $43,000. It should have been awarded. It adds up to a substantial amount of money, and Leonard Long, as with any prevailing tort plaintiff, was entitled to it.

*Radioear* caught my attention when it was first issued two months before my debut in Boise.[2] I continue to have problems with both opinions in *Radioear*. Not-

---

1. The Court of Appeals also had issued and withdrawn an earlier opinion, which I mentioned in my opinion of March 30, 1989, wherein I repeated some of the content of the first Court of Appeals opinion, dated February 8, 1985.

2. In my first year of judicial service I also participated in *Bob Rice Ford v. Donnelly*, 98

ing that rehearing was denied, I resorted to the original file in the clerk's office to see what light might be found there. What I discovered was that *both* parties had petitioned for a rehearing. And still the Court denied reconsideration, apparently bogged down in a dispute as to the better of two differing rationales, and not willing to attempt reaching another resolution. Whatever the right of it, to the credit of the McFadden–Bakes–McQuade opinion, and likewise to the credit of the Shepard–Donaldson opinion, neither saw enough merit in *Bechtel v. Evans*, 10 Idaho 147, 77 P. 212 (1904), to even mention it. Nor was it mentioned in *Bob Rice Ford.*

I have little regard for the rationale of a 1904 opinion which was based upon principles not evolved by Idaho's Supreme Court, but rather found in a New York case from a court (if it truly fits the definition) the likes of which we have never had in Idaho. Moreover, I am wholly unable to fathom the reason for adopting the rule of *Bechtel,* other than that it came from the eastern seaboard, and Idaho had little case law of its own upon which to draw.

Although Justice Johnson has now utilized *Bechtel* as the backbone of his two opinions in this case, I am not persuaded, and will not be. If I correctly read the Court's now withdrawn 1989 Opinion No. 40, now found only in 89 I.S.C.R. 357, the Court per Justice Johnson stated as one of its conclusions that: "If Long had presented the clerk with a satisfaction of judgment, presumptively the clerk would have released the tendered amount to Long," in which case Long would *not* "have been foreclosed from pursuing an appeal of the judgment." 89 I.S.C.R. at 359. The opinion arrived at that conclusion by the dazzling footwork of a string of choices:

(1) The Hendrickses *chose* to condition their tender by requiring Long to satisfy the judgment. (2) It was also the *choice* of the clerk to accept such a tender that was

Idaho 313, 563 P.2d 37 (1977). As pointed out in Justice Shepard's opinion, that appeal came to a sudden halt when at oral argument we were

not in the form contemplated by statute. (3) It was Long's *choice* not to accept the amount tendered, and he is not entitled to post-judgment interest on the amount of the original judgment.

Two of those three choices were not of Long's choosing, but rather were the doing of the Hendrickses as to (1), and the court clerk as to (2). Long's only choice, to not draw on the money, was not a choice but a *chance,* which his counsel decided against, knowing that if he did gather in the money he might be running afoul of what many practitioners believed was the better opinion in *Radioear,* namely Justice Shepard's dissent, joined by Justice Donaldson. There the test of voluntariness was set out: "The rationale for the rule appears to be that payment made under the threat of imminent levy and sale is under duress and therefore regarded as coerced." *Radioear Corp. v. Crouse,* 97 Idaho 501, 506, 547 P.2d 546, 551 (1976) (Shepard, J. dissenting). The Hendricks' choice was not coerced, but they were not appealing. It was Long who was appealing, but he was neither threatening execution and levy against the Hendrickses, nor was he, in a wise decision, about to gather the fruits of his judgment. To do so was to risk his right to pursue $21,000 in loss of wages to which he was clearly entitled. Only a litigant with a fool for a lawyer would have taken that risk—especially under the unsettled state of Idaho law as witnessed by *Radioear's* two diversely opposite opinions.

Clearly the 1989 opinion was based on Justice Johnson's reasoning that Long forfeited his right to interest on the judgment award, which he predicated solely on *Bechtel.* Now, as I read today's substitute opinion, Long continues to lose, but this time on the theory that "Long sought a new trial and rejected the tendered amount ... by doing so he gave up his right to interest on the amount of the original judgment from the date of the tender." 117 Idaho 1053, 793 P.2d at 1225.

informed that the entire amount owed had been paid. The appeal was dismissed, and no new law was made.

I do not see from the record that Long rejected anything. He simply did not take the risk of causing a dismissal of his appeal, which was aimed at gaining an additional $21,000. Quoting from the majority quoting *Bechtel*, "as a general proposition of law, a successful party should not be allowed to gather in and enjoy the fruits of his judgment and thereafter prosecute an appeal and complain of error committed against him.... 10 Idaho at 149–50." 117 Idaho 1053, 793 P.2d at 1225. That language is in substance the language found in Justice Shepard's *Radioear* opinion.

Justice Johnson writes this second time around that allowing Long to seek an increase in his judgment by an appeal by which he hoped to eventually gain the omitted $21,000 in loss of wages, and as well the interest accruing on that amount, is inconsistent with allowing him to collect interest on the amount tendered to pay off the initial judgment which had been entered. Frankly, it does not add up. And it does not, contrary to Justice Johnson's assertion, make it impossible for a judgment debtor to avoid payment of interest while the judgment creditor pursues a $21,000 sum of money—inadvertently not awarded to him notwithstanding that the proof was in place. At oral argument it was made very clear that counsel for the Hendrickses was putting Long in a box by making a conditional tender, where, if his real and only purpose was to free the Hendricks' property of the judgment lien against it, and if the purpose also included avoiding the accrual of interest on the initial judgment, all could have been accomplished had Hendricks' counsel stated in his written tender to the clerk his agreement on behalf of his clients that Long's acceptance of the money from the clerk would not affect or operate to invalidate or moot the appeal. Instead the ploy of making a tender not in accord with the statute was utilized. By the grace of the Idaho Supreme Court the ploy pans out, and counsel for the Hendrickses has turned a neat trick for his clients. Alas, however, at the expense of the badly injured Leonard Long, who is being judicially deprived of all the interest which accrues to all other judgment creditors.

Nothing supports the bald statement that the rationale for Justice Johnson's conclusion is that Long on pursuing his appeal might have eventually received a judgment for less than what he had received (had he accepted the tender). Absent any cross-appeal being taken by the Hendrickses, and there was none, the basis of that conclusion is presently vaporous.