735 P.2d 1023

**WESTMONT TRACTOR COMPANY,**
**Plaintiff-Respondent,**

v.

**The ESTATE OF Chris WESTFALL, deceased, and Karla Westfall, as Personal Representative of the Estate of Chris Westfall, Defendants-Appellants.**

**No. 16423.**

Supreme Court of Idaho.

April 7, 1987.

James D. Manning of Hawley Troxell Ennis & Hawley, Pocatello, for defendants-appellants. James D. Manning, argued for defendants-appellants.

Gregory L. Crockett and Dennis A. Love, of Hopkins, French, Crockett, Springer & Hoopes, Idaho Falls, for plaintiff-respondent. Dennis A. Love, argued for plaintiff-respondent.

DONALDSON, Justice.

This appeal comes to us from the district court's *nunc pro tunc* entry of judgment against the appellant, Karla Westfall, Personal Representative of the estate of Chris Westfall. We are asked to decide whether, in the circumstances of this case, a *nunc pro tunc* entry of judgment against an alleged debtor's personal representative is proper when the personal representative has not been substituted as a defendant in the action which had been brought to collect the debt. For the reasons set forth below, we hold the district court's order to be improper, and therefore, reverse and remand.

Chris Westfall was purchasing two pieces of logging equipment from Westmont and defaulted on payments. Pursuant to the security agreement the collateral was repossessed and sold, but the sale proceeds did not satisfy the debt. Westmont then initiated a proceeding in district court in Bonneville County to obtain a deficiency judgment. Judgment was entered by default against Chris Westfall for failure to answer. Subsequently, Westfall, arguing excusable neglect, moved the court to set

aside the judgment so that he could file an answer. The court granted the motion. Thereafter, Westmont and Chris Westfall executed and filed a Stipulation and Consent to Judgment which called for Westfall to pay part of the deficiency in monthly installments or suffer an entry of judgment if he should fail to do so. The instrument provided that the action would remain pending and would not be subject to dismissal until all sums due had been paid, but also that judgment might be entered by the court upon Westmont's affidavit indicating default by Westfall.

Such was the state of affairs when two years later, Chris Westfall was killed in a logging accident. Probate of his estate was commenced in magistrate court in Lemhi County, and Karla Westfall, his surviving spouse, was appointed personal representative. However, the suit by Westmont against Chris Westfall was still pending. Thereafter, Westmont filed an affidavit in district court pursuant to the stipulation agreement stating that Westfall was in default since January and asking for entry of judgment. The judgment was so entered against Westfall on October 17, 1984, one month after Westfall's death and several weeks after commencement of the probate proceedings of his estate. Neither the personal representative nor the estate had been made parties to the action in Bonneville County. On October 22, 1984, Westmont filed an abstract of judgment in the Lemhi County real property records.

In December, 1984, Westmont, pursuant to the presentation requirements of the Uniform Probate Code, filed a claim in the Lemhi County probate proceedings requesting priority status relying on its recorded abstract of judgment. Subsequently, following expiration of the statutory period for presenting claims, the personal representative gave notice of disallowance to the claimed priority status of Westmont's

claim. The disallowance did not dispute the debt or the amount, only the secured status.

Westmont, then took several routes to obtain secured status. First, relying on I.R.C.P. 25(a)(1) [1], it returned to district court in Bonneville County, requesting that the personal representative and estate be substituted as parties and the judgment of October 17, 1984, be amended to reflect the substitution. The district court by Memorandum Decision denied the motion, opining that the filing of the abstract of the original judgment created a lien against the estate real property. Relying on this assumption, the district court determined that Westmont already had secured status and the substitution was not needed. However, the district judge did not entirely close the door on the substitution motion. The Memorandum Decision concluded with: "If the Magistrate Court were to find that the judgment was not entitled to priority as of the date abstracted, this Court would reconsider this opinion."

Westmont then timely petitioned the magistrate court to have its claim given secured status. The magistrate court entered its decision on Westmont's claim on October 15, 1985, denying secured status because the judgment lien was not filed against the estate. Westmont then returned to district court to seek the reconsideration which the district court seemingly had encouraged. Following a hearing on the reconsideration motion, the district court by order allowed substitution of the personal representative, *nunc pro tunc*, retroactive to the date of original entry of judgment of October 17, 1984, thereby giving secured status to Westmont's claim. The estate of Chris Westfall, and the personal representative appeal that ruling.

■ Initially, we must address the timeliness of Westmont's reconsideration mo-

---

1. I.R.C.P. 25(a)(1) reads as follows:
   "**Rule 25(a)(1). Substitution of parties—Death.**—If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by the successors or representatives of the deceased party or by any party and together with the

   notice of hearing, shall be served on the parties as provided in rule 5 and upon persons not parties in the manner provided in rule 4 for the service of a summons. If substitution is not made within a reasonable time, the action may be dismissed as to the deceased party."

tion, to which objection was made by the personal representative. A Petition for Reconsideration may be properly treated as a motion to alter or amend the judgment. *Obray v. Mitchell,* 98 Idaho 533, 567 P.2d 1284 (1977), but such motion must be filed within ten days after entry of judgment, I.R.C.P. 59(e). Westmont's reconsideration motion did not comply with the timing requirements as set forth in I.R.C.P. 59(e), more than a month having elapsed. However, in light of the district judge's final remarks in his Memorandum Decision, we are hesitant to retroactively foreclose Westmont's motion for reconsideration. The district judge by his gratuitous comments clearly led Westmont into not moving for reconsideration with ten days. Westmont instead pursued its claim in the magistrate court to an unsuccessful conclusion, and only then, sought reconsideration in the district court. While in a literal sense, the requirements of I.R.C.P. 59(e) were not satisfied, which would normally prevent us from considering the merits of the appeal, we conclude, that due to the unusual fact situation and erroneous advice given by the district judge, in all fairness, Westmont should not be penalized.

Accordingly, we turn to the issue of the validity of the *nunc pro tunc* order. *Nunc pro tunc* literally means "now for then." Black's Law Dictionary (5th Edition 1981). In the present context, the phrase indicates that a judgment should be given retroactive effect to a designated date. In this case specifically, the district court's order substituting the personal representative was retroactive to October 17, 1984, the date of the original judgment against Westfall. Westmont seeks the retroactive substitution to give its claim a priority status in the probate proceeding.

The personal representative does not dispute substitution, but challenges the district court's *nunc pro tunc* order, relying on our Court of Appeals' recent case of *Ward v. Lupinacci,* 111 Idaho 40, 720 P.2d 223 (Ct.App.1986). In *Ward,* a jury verdict was returned finding the defendant, Lupinacci, negligent in the operation of a motor vehicle. Nearly two years later, the plaintiff, Ward, undertook to collect upon Lupi-

nacci's liability, but found judgment had never been entered upon the jury verdict. Ward then moved for an entry of judgment requesting *nunc pro tunc* effect. The trial court entered the judgment, but declined to make it *nunc pro tunc.* Ward appealed.

The Court of Appeals set forth the general requirements for a valid *nunc pro tunc* entry of judgment:

"It is widely held that such judgments may be entered in furtherance of justice where failure to enter an earlier judgment was due to accident, excusable oversight or mistake. [Citations omitted.] However, it also has been stated that a judgment may not be given *nunc pro tunc* effect to correct a judicial error, as opposed to a clerical error; neither may it contain a rule and recite an event that did not actually occur." [Citations omitted.] *Ward, supra,* at 42, 720 P.2d at 225.

The Court of Appeals then considered these requirements in apparent conflict, but capable of reconciliation. They examined two Idaho cases, *Donaldson v. Henry,* 63 Idaho 467, 121 P.2d 445 (1942), and *Fall River Irrigation Co. v. Swendsen,* 41 Idaho 686, 241 P. 1021 (1925), and one Washington case, *In re Tabery,* 14 Wash.App. 271, 540 P.2d 474 (1975), and concluded that the "issue of *nunc pro tunc* relief turned upon a determination of intent." *Ward, supra,* at 43, 720 P.2d at 226. In all cases discussed by the Court of Appeals, the district court intended to enter judgment against a party, but due to a judicial accident, excusable oversight, or mistake, the judgment was entered incorrectly; so, a *nunc pro tunc* entry was used to correct the error. The Court of Appeals then reversed the district court ruling, holding that the failure to timely enter the judgment against Lupinacci was a result of a judicial oversight. *Id.,* at 43, 720 P.2d at 226. Further, the court held that justice requires the entry of the judgment *nunc pro tunc* because "[n]o unfair prejudice from such relief has been shown by the defendants." *Id.*

With these principles from *Ward* in mind, we turn to the present case to see if

the district court correctly entered the judgment *nunc pro tunc*. The district court held that no prejudice to the estate resulted from the *nunc pro tunc* order. In its order on reconsideration, the court stated:

> "The reason there is no prejudice here is due to the particular circumstances. Default judgment has been taken against Mr. Westfall during his lifetime, and it was set aside by stipulation. That stipulation provided for regular payments by Mr. Westfall, and if not strictly made according to the agreement, then judgment could be taken. The personal representative would have no defense to offer on what amounted to a confession of judgment."

We disagree. A review of the affidavit in support of judgment filed by Westmont indicates that it intended its judgment be entered against Westfall individually and not against his estate. Only after its claim to a priority in the probate proceedings was denied, did it attempt to judicially proceed against the personal representative and the estate. The court could not retroactively enter judgment against the estate and its personal representative where initially the court did not intend to secure judgment against the parties. *Donaldson, supra; Fall River Irrigation, supra.* The entry of the judgment against Westfall was not due to "accident, excusable oversight or mistake" on the part of the court, but was attributable to the court's doing what Westmont asked of it.

We emphasize that our ruling in no way implies that we agree or disagree with the magistrate's holding that Westmont is not presently secured. We simply rule that the facts of this case do not warrant a *nunc pro tunc* entry.

Reversed and remanded.

Costs to appellants.

SHEPARD, C.J., and BAKES, BISTLINE and HUNTLEY, JJ., concur.