927 P.2d 887

C. Dean WEAVER and Carole Weaver, husband and wife, d/b/a Nelson's Seed Cleaning, and Rosalia Producers, and Steven Bruce Booker, on behalf of those Underwriters at Lloyds, London, signatory to certificate number AH 403183, Plaintiffs–Appellants–Cross Respondents,

v.

SEARLE BROS., a partnership, Merwyn Searle and Karl Searle, John and Jane Does I through V, its partners, and McNabb Grain, Inc., an Idaho corporation, Defendants–Respondents–Cross Appellants.

NORTHWEST TRADING COMPANY, a Washington Corporation, Plaintiff,

v.

Dean WEAVER and Carole Weaver, individually, and as husband and wife, doing business as Nelson's Seed, and Rosalia Producers, Defendants–Third Party Plaintiffs-Third Party Counterdefendants,

v.

SEARLE BROS., a partnership, Merwyn Searle, and Karl Searle, John and Jane Does I through V, its partners, and McNabb Grain, Inc., an Idaho corporation, Third Party Defendants–Third Party Counterclaimants.

McNABB GRAIN, INC., an Idaho corporation, Third Party Counterclaimant,

v.

Dean WEAVER and Carole Weaver, individually, and as husband and wife, doing business as Nelson's Seed, Third Party Counterdefendants.

No. 21740.

Supreme Court of Idaho, Boise, September 1996 Term.

Nov. 27, 1996.

Elam & Burke, Boise, and Lukins & Annis, Spokane, WA, for appellants. Darrell W. Scott argued.

Benoit, Alexander, Sinclair, Harwood & High, Twin Falls, for respondents. J. Walter Sinclair argued.

JOHNSON, Justice.

This is an indemnity case in which the seller of wheat seed seeks indemnity from earlier suppliers of the seed based on settlements the seller made with the growers who planted the seed and experienced losses. We conclude, as follows:

1. The trial court did not abuse its discretion in awarding the seller indemnity or in limiting the amount of the indemnity to the settlement amounts the trial court determined were reasonable.

2. The seller is entitled to prejudgment interest on the indemnity award.

3. The trial court correctly offset an amount paid to the seller by the insurer for an

intermediate supplier of the seed and correctly did not include in the indemnity award the attorney fees of intermediate suppliers that were assigned to the seller.

4. The trial court's findings that seed supplied by other suppliers did not cause the losses for which the seller sought indemnification are not clearly erroneous.

5. The seller is not entitled to attorney fees pursuant to I.C. § 12–120(3).

6. We will not address two other issues because of the failure to comply with I.A.R. 35.

## I.

## THE BACKGROUND AND PRIOR PROCEEDINGS

Rosalia Producers (Rosalia) sold spring wheat seed (the seed) heavily contaminated with winter wheat to several wheat growers (the growers). After the growers made claims for damages caused by the seed, Rosalia paid $559,276 to settle the claims of twenty-nine of the growers.

Rosalia brought suit in Washington against Northwest Trading (Northwest), which supplied the seed to Rosalia. In settlement of this suit, Northwest stipulated to a $651,912 judgment in favor of Rosalia. As part of the settlement, Rosalia agreed not to execute on the judgment, and Northwest assigned to Rosalia its claims against Nelson's Seed Cleaning (Nelson's), McNabb Grain, Inc. (McNabb), and Searle Brothers (Searle) arising out of the sale of the seed. Nelson's had supplied the seed to Northwest. McNabb had supplied the seed to Nelson's. Searle had supplied the seed to McNabb.

Rosalia also sued Nelson's in Washington. In settlement of this suit, Nelson's stipulated to a $667,732 judgment in favor of Rosalia. As part of the settlement, Rosalia agreed not to execute on the judgment, except for any amount Rosalia could receive from Nelson's insurance company (Nelson's insurer), which paid Rosalia $69,375. As part of the settlement, Nelson's also assigned to Rosalia its claims against Searle and McNabb arising out of the sale of the seed.

Rosalia also sued Roberts Elevator (Roberts) and Western Stockman (Western) in Washington. Roberts and Western had supplied Rosalia with a spring wheat seed of a type other than the type specified by Rosalia. Roberts and Western paid Rosalia $8,400 in settlement of Rosalia's claims against them.

In Idaho, Northwest sued Nelson's, Searle, and McNabb, and Nelson's sued Searle and McNabb. These two suits were consolidated, and Rosalia became a party. Northwest, Nelson's, and Rosalia sought indemnification from Searle and McNabb. Nelson's also brought a commercial contract claim against McNabb. Following a court trial, the trial court found that Searle and McNabb had breached their express warranties, implied warranties of fitness for a particular purpose, and implied warranties of merchantability. The trial court found that the seed provided by Searle was the source of the contamination of the seed sold by Rosalia to the growers and awarded Rosalia indemnity for its settlement with the growers. The trial court found, however, that sixteen of the twenty-nine settlements Rosalia made with the growers were for amounts that were not reasonable. Therefore, the trial court awarded Rosalia $464,087, instead of $559,276, as the indemnity amount. The trial court also offset against the indemnity amount the $69,375 Rosalia received from Nelson's insurer, but did not offset the amount Rosalia received from Roberts and Western, finding that those losses were unconnected with the losses caused by Searle and McNabb. The trial court did not award Rosalia prejudgment interest or attorney fees, and did not award Rosalia the attorney fees Northwest and Nelson's had assigned to Rosalia.

Rosalia and Nelson's appealed. Searle and McNabb cross-appealed.

## II.

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN AWARDING INDEMNITY TO ROSALIA.

■ Searle and McNabb assert that Rosalia is not entitled to any indemnity because (1) some of the settlements were not reasonable, (2) Rosalia had unclean hands, and (3) Rosalia had no right to bring an indemnity action against Searle and McNabb. We disagree.

The amount awarded to indemnify a party who has settled a claim against it must be reasonable. *Chenery v. Agri–Lines Corp.*, 115 Idaho 281, 284, 766 P.2d 751, 754 (1988). It is inherent in this rule that a party otherwise entitled to indemnity may recover a settlement amount to the extent it is reasonable. Otherwise, the mere unreasonableness of the settlement would destroy the right to indemnity. This would be contrary to the " 'strong policies in favor of maximizing recovery to the injured party, settling cases and apportioning fault' " that underlie the equitable concept of indemnity. *Id.* at 285, 766 P.2d at 755 (quoting *Mullin Lumber Co. v. Chandler*, 185 Cal.App.3d 1127, 1132, 230 Cal.Rptr. 122, 124 (1986)).

In the trial court, Searle and McNabb did not raise the issue of Rosalia having unclean hands, nor did the trial court address the issue in its decision. Therefore, we do not address this issue.

In *Chenery*, Layne manufactured, sold, and installed a deep-well pump on property owned by Chenery and leased by the Spencers. Six years later, the Spencers employed Agri–Lines to repair the pump. During the repair, the pump fractured. As a result, Chenery and the Spencers suffered crop loss for which they sued Agri–Lines. *Id.* at 283, 766 P.2d at 753. In upholding Agri–Lines' right to indemnity from Layne, the Court noted that Agri–Lines sought indemnity under the common law, not in contract, and concluded as follows: "Agri–Lines here established that Layne was the party responsible for the injuries, and hence has established its right to indemnity." *Id.* at 284, 766 P.2d at 754. The same is true in the present case of Rosalia's right to be indemnified by Searle and McNabb.

## III.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN LIMITING THE INDEMNITY AMOUNT TO THE SETTLEMENT AMOUNTS THE TRIAL COURT DETERMINED WERE REASONABLE.

Rosalia asserts that it is entitled to full indemnification for the settlement amounts. We disagree.

Because indemnity is an equitable principle, the trial court has "discretion in determining the 'equities' between the parties, including the reasonableness of [the party's] actions . . . ." *Griggs v. Safeco Ins. Co. of Am.*, 103 Idaho 790, 792, 654 P.2d 378, 380 (1982). Therefore, in reviewing the trial court's determination of the reasonableness of the settlement amounts, we apply an abuse of discretion standard. In doing so, we use a three-step analysis. *Sun Valley Shopping Ctr. Inc. v. Idaho Power*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

First, we determine whether the trial court correctly perceived the issue as one of discretion. *Id.* In this case, the trial court ruled that the reasonableness of a settlement is a question of law measured from the viewpoint of the defendant. The trial court then said that it would "consider the circumstances of the case and the actual value of the settlement." The trial court next evaluated various factors in determining that the settlements with thirteen of the growers were reasonable, but that settlements with sixteen were not. The trial court did not indicate that its ruling was dictated by any legal rule. Instead, in reaching its decision, the trial court made a "detailed analysis of the facts surrounding each individual claim, including quantity of seed purchased, planting rates employed by each grower, levels of contamination observed or determined in each affected field, the number of replanted acreage damaged, comparisons of actual and historical yields, and yields obtained in comparable spring wheat fields where available." This analysis was tantamount to the trial court saying that it had discretion in determining reasonableness.

Second, the trial court must have acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available. *Id.* The trial court acted within the outer boundaries of its discretion by determining that some settlements were reasonable and others were not. The standards applicable to the trial court's choices are simply weighing the equities relating to reasonableness.

Third, the trial court must have reached its decision by an exercise of reason. *Id.* The trial court supported its decision with a reasoned analysis.

Therefore, the trial court did not abuse its discretion in awarding Rosalia the indemnity amount it concluded was reasonable.

## IV.

### ROSALIA IS ENTITLED TO PREJUDG-MENT INTEREST ON THE INDEM-NITY AMOUNT THE TRIAL COURT AWARDED.

■ Rosalia asserts that it is entitled to prejudgment interest on the indemnity amount the trial court awarded. We agree.

In *Chenery*, the Court pointed out that in 1980 Agri-lines, the party seeking indemnification, settled with the parties seeking damages for crop losses for a total of $177,000, $110,000 for the Spencers and $67,000 for Chenery. Following a jury trial in which the jury found Layne, the party from whom Agri-lines sought indemnification, totally responsible for the crop losses, the trial court in 1986 awarded Agri-lines $157,000 against Layne. *Id.* at 283, 766 P.2d at 753. This Court reversed the trial court's denial of prejudgment interest, stating as follows:

> We agree with the assertion that here the amount of the contested liability is liquidated, and hence an award of prejudgment interest is appropriate to compensate *Agri-Lines* for the loss of their money from 1980 to 1986. In the area of prejudgment interest, equitable principles are emphasized. As above noted, Agri-Lines was required to defend against the Chenery/Spencer action, and paid for the damages that were ultimately determined to be the fault of Layne. Under such circumstances, it is inequitable to deny Agri-Lines for the use of its money during the period of six years.

*Id.* at 289, 766 P.2d at 759 (citations omitted).

Although there was apparently no question about the reasonableness of the $177,000 settlement Agri-Lines made, the Court ruled that it was equitable that Layne pay prejudgment interest on the $157,000 that the trial court awarded to indemnify Agri-Lines. In the same sense as the Court's decision concerning prejudgment interest in *Chenery*, in the present case Rosalia was required to defend against the growers' action and paid for the damages that were ultimately determined to be the fault of Searle and McNabb. Therefore, *Chenery* dictates our decision in this case that it would be inequitable not to award Rosalia prejudgment interest.

## V.

### THE TRIAL COURT CORRECTLY OFF-SET THE AMOUNT PAID BY NEL-SON'S INSURER, AND CORRECTLY DID NOT INCLUDE THE AMOUNT OF NELSON'S AND NORTHWEST'S ATTORNEY FEES.

■ Rosalia asserts that the trial court should not have offset from the indemnity award the $69,375 Rosalia received from Nelson's insurer, and should have included in the award Nelson's and Northwest's attorney fees. We disagree.

In *State v. Continental Casualty Co.*, 126 Idaho 178, 879 P.2d 1111 (1994), the State of Idaho (the state) was the equitable subrogee of Idaho State University (ISU). The state sued ISU's insurance company, Continental, for costs it incurred in defending ISU in a case. ISU's other insurance company, Compass, paid the state $150,000 for these costs. The trial court awarded the state $746,592 against Continental. On appeal, this Court determined that Compass paid more than its proportionate amount of liability for the costs, and therefore reduced Continental's judgment by $87,450, which was the amount overpaid by Compass. *Id.* at 186, 879 P.2d at 1119. The Court determined that "[a]n equitable remedy should not be applied to allow a party to recover more than that which will make the party whole." *Id.* Therefore, the state was not entitled to recover the full amount against Continental without the offset. This, the Court said, would have allowed the state to recover more damages than it lost. *Id.*

Rosalia's receipt of $69,375 from Nelson's insurer was a payment against the amount for which Rosalia sought indemnification

from Searle and McNabb. Inclusion of the same amount as part of the indemnity award would constitute a double recovery prohibited by *Continental Casualty*.

We conclude that it was also correct for the trial court not to include in Rosalia's judgment the amount of Nelson's and Northwest's attorney fees. Although Rosalia sought these fees as assignee of Nelson's and Northwest, its recovery of these amounts would increase its recovery against Searle and McNabb in a manner foreclosed by *Continental Casualty*. If Nelson's and Northwest had not assigned their attorney fee claims to Rosalia, but had instead successfully pursued these claims against Searle and McNabb and had then paid Rosalia the amounts they recovered, clearly it would be necessary to offset these amounts in the same manner as the payment from Nelson's insurer. Use of assignments instead of direct payments does not change the result.

## VI.

### THE TRIAL COURT'S FINDINGS THAT ROBERTS AND WESTERN DID NOT CAUSE THE LOSSES FOR WHICH ROSALIA SEEKS INDEMNIFICATION ARE NOT CLEARLY ERRONEOUS.

Searle and McNabb assert that the trial court should have offset from the amount awarded to Rosalia the amount Rosalia received from Roberts and Western. We disagree because the trial court's findings on this issue are not clearly erroneous.

The trial court found that Roberts and Western were not the source of the winter wheat contamination and that the alleged losses caused by Roberts and Western are unconnected to the winter wheat contamination. There is substantial and competent evidence in the record to support the trial court's findings. Therefore, the findings are not clearly erroneous.

## VII.

### ROSALIA IS NOT ENTITLED TO ATTORNEY FEES PURSUANT TO I.C. § 12–120(3).

Rosalia, as assignee of Nelson's, asserts that Nelson's is entitled to attorney fees pursuant to I.C. § 12–120(3). We disagree.

Although the parties argue pro and con about whether Rosalia, as assignee of Nelson's, abandoned Nelson's commercial contract claim against McNabb, we conclude that it is not necessary for us to resolve this dispute. In connection with its ruling on Rosalia's request for attorney fees against McNabb, the trial court stated that Rosalia had not provided the trial court with a meaningful segregation of the attorney fees which were incurred in pursuing a commercial contract claim against McNabb. Recently, we have upheld a trial court's denial of attorney fees under this statute where the party claiming entitlement to the fees had not isolated or separated the fees attributable to the contract claim from those attributable to another claim not covered by I.C. § 12–120(3). *Brooks v. Gigray Ranches, Inc.*, 128 Idaho 72, 78–79, 910 P.2d 744, 750–51 (1996). In *Brooks*, we pointed out that the record supported the trial court's conclusion that the party claiming attorney fees had not sufficiently isolated the fees attributable to the claim covered by the statute. *Id.* at 78, 910 P.2d at 750. From our review of the documentation submitted in support of Rosalia's request for attorney fees in the present case, we find the same to be true here.

## VIII.

### SEARLE AND McNABB FAILED TO COMPLY WITH I.A.R. 35 CONCERNING THEIR I.R.C.P. 68 ISSUE.

In their initial brief on appeal, Searle and McNabb list as an additional issue on appeal an award of all costs incurred after their offer of judgment of $455,000 on October 20, 1993. They do not, however, cite authority, nor do they argue this issue in either of their briefs. The only other mention of the issue is in the conclusion in their initial brief, where they state, as follows: "In the event that the ultimate award is less than Searles' Rule 68 offer of judgment ..., Respondents seek an award of their costs." In addition, the offer of judgment is not part of the record before us.

I.A.R. 35(a)(6) requires that the argument portion of the appellant's brief "contain the

contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes, and parts of the transcript and record relied upon." Apparently, Searle and McNabb intended the I.R.C.P. 68 issue to be part of their cross-appeal. We do not address the issue because Searle and McNabb have not complied with I.A.R. 35(a)(6).

## IX.

### ROSALIA FAILED TO COMPLY WITH I.A.R. 35 CONCERNING ITS REQUEST FOR ATTORNEY FEES ON APPEAL.

In the statement of issues in its initial brief on appeal, Rosalia requests attorney fees pursuant to I.C. §§ 12–120(3) and 12–121, I.R.C.P. 54 and I.A.R. 41. Rosalia did not address this issue in the argument section of either of its briefs on appeal. Therefore, we do not address the issue because Rosalia has not complied with I.A.R. 35(a)(6).

## X.

### CONCLUSION

We affirm the trial court's judgment with the exception of the trial court's denial of prejudgment interest to Rosalia, which we reverse. We remand the case to the trial court with directions to amend the judgment to include prejudgment interest on the indemnity award.

Because of the mixed result, we award no costs on appeal.

We award no attorney fees on appeal.

McDEVITT, C.J., and TROUT, SILAK and SCHROEDER, JJ., concur.