962 P.2d 381

C. Dean WEAVER and Carole Weaver, husband and wife, d/b/a Nelson's Seed Cleaning, Rosalia Producers, and Steven Bruce Booker, on behalf of those Underwriters at Lloyds, London, signatory to certificate number AH 403183, Plaintiffs–Appellants,

v.

SEARLE BROTHERS, a partnership, Merwyn Searle and Karl Searle, and John and Jane Does I through V, its partners, and McNabb Grain, Inc., an Idaho corporation, Defendants–Respondents.

NORTHWEST TRADING COMPANY, a Washington corporation, Plaintiff,

v.

Dean WEAVER and Carole Weaver, individually and as husband and wife, d/b/a Nelson's Seed, and Rosalia Producers, Defendants–Third Party Plaintiffs,

v.

SEARLE BROTHERS, a partnership, Merwyn Searle and Karl Searle, and John and Jane Does I through V, its partners, and McNabb Grain, Inc., an Idaho corporation, Third–Party Defendants.

McNABB GRAIN, INC., an Idaho corporation, Third–Party Counterclaimant,

v.

Dean WEAVER and Carole Weaver, individually and as husband and wife, d/b/a NELSON'S SEED, Third–Party Counterdefendants.

McNABB GRAIN, INC., an Idaho corporation, Third–Party Cross Claimant,

v.

SEARLE BROTHERS, a partnership and Merwyn Searle and Karl Searle, and John and Jane Does I through V, its partners, Third–Party Cross Defendants.

No. 24193.

Supreme Court of Idaho, Boise, May 1998 Term.

July 16, 1998.

Elam & Burke, P.A., Boise; Lukins & Annis, P.S., Spokane, Washington, for appellants. Darrell W. Scott argued.

Benoit, Alexander, Sinclair, Harwood & High, Twin Falls, for respondents. J. Walter Sinclair argued.

JOHNSON, Justice.

This case is a prejudgment interest case. We conclude that the trial court correctly determined that prejudgment interest ceased accruing on the date that the judgment debtor satisfied the judgment and that postjudgment interest on the award of prejudgment interest began to accrue on the date of the judgment containing that award.

## I.

## THE BACKGROUND & PRIOR PROCEEDINGS

Rosalia Producers (Rosalia) sold spring seed wheat improperly contaminated with winter seed wheat to several growers. Rosalia settled with some of the growers for $559,276 in May 1990 and then sought indemnification from Searle Brothers (Searle) and others not involved in this appeal, who had initially provided Rosalia with the seed wheat. *See Weaver v. Searle Bros.*, 129 Ida-

ho 497, 927 P.2d 887 (1996) (*Weaver I*). In *Weaver I*, the trial court ruled that $464,087 (the indemnification award) was the reasonable amount of the settlements, awarded $2,214 in consequential damages, and offset the amount of the indemnification award by $69,375, which was the amount of a payment that Rosalia had received from a third party. The trial court entered judgment for $573,-010.35. On December 1, 1994, Rosalia filed a notice of appeal. Searle requested a stay of execution. The trial court granted a temporary stay of execution but stated that if an opinion concerning the stay had not been issued by December 23, 1994, Searle would have to post bond by December 28, 1994, in order to further stay the execution. On December 27, 1994, Searle deposited a draft (the draft) in the amount of $573,010.35 (Searle's deposit) with the clerk of the trial court. The draft bore the notation that it was "in settlement of any and all claims against Searle Brothers resulting from crop loss claims." The accompanying cover letter stated that the draft was "in satisfaction of the existing judgment."

On February 27, 1995, the trial court amended the judgment to $458,048.27, including $61,122.27 in costs, and ordered the return to Searle of the amount Searle deposited that exceeded the amended judgment. The clerk delivered to Rosalia a cashier's check for $458,048.27. Subsequently, based on the stipulation of the parties, the trial court ordered Rosalia to return the cashier's check.

In *Weaver I*, this Court affirmed the amended judgment except for the trial court's failure to award prejudgment interest on the indemnification award. The Court reversed and remanded with directions to amend the judgment to add prejudgment interest. *Weaver I*, 129 Idaho at 501, 503, 927 P.2d at 891, 893. In *Weaver I*, the Court did not discuss Searle's deposit or its effect on the accrual of interest.

On remand, the trial court noted that if Searle's deposit was not considered, prejudgment interest would run from May 1990, the date of Rosalia's settlements, until the date of a second amended judgment. The trial court also determined that postjudgment in-

terest would run from October 19, 1994, the date of its original judgment, on those awards not reversed on appeal. The trial court then concluded that Searle's deposit constituted a satisfaction under section 10–1115 of the Idaho Code (I.C.) and that prejudgment and postjudgment interest stopped accruing on the date of Searle's deposit. The trial court entered a second amended judgment based on its conclusion. Rosalia appealed.

## II.

### ROSALIA IS NOT ENTITLED TO PREJUDGMENT INTEREST FROM THE DATE OF ITS SETTLEMENT TO THE DATE OF A THIRD AMENDED JUDGMENT.

Rosalia asserts that the trial court should not have ruled that the accrual of prejudgment interest stopped on the date of Searle's deposit. We disagree.

In *Mitchell v. Flandro*, 95 Idaho 228, 506 P.2d 455 (1972) (*Mitchell I*), a factually similar case, the Court reversed the part of the trial court's decision denying prejudgment interest and remanded the case to the trial court with instructions to recompute the interest as directed in the opinion. The trial court calculated the interest and the judgment creditor appealed. On the judgment creditor's second appeal, the Court established rules governing prejudgment and postjudgment interest when a trial court is reversed on appeal for failure to include prejudgment interest as part of the original judgment. *Mitchell v. Flandro*, 96 Idaho 236, 526 P.2d 841 (1974) (*Mitchell II*). In *Mitchell II*, the Court concluded that prejudgment interest runs from the date that liability was liquidated until the date that the judgment was entered on remand and that judgments for costs not reversed on appeal earn postjudgment interest from the date of the original judgment. *Id.* at 238, 526 P.2d at 843. The parties do not dispute the validity of the rules set forth in *Mitchell II.* They do dispute whether those rules apply to the present case in light of Searle's deposit.

### A. Searle's deposit was an effective I.C. § 10–1115 satisfaction.

■ Under I.C. § 10–1115, any person "against whom exists a judgment for the payment of money … may pay the amount due on such judgment to the clerk of the court in which such judgment was rendered, and such clerk shall thereupon release and satisfy such judgment upon the records of such court." Whether the trial court properly (1) characterized Searle's deposit as an I.C. § 10–1115 satisfaction and (2) applied the satisfaction to halt the accrual of prejudgment interest are mixed questions of fact and law because they are "applications of legal rules or principles to certain facts." *Valley Bank v. Neibaur*, 120 Idaho 733, 735, 819 P.2d 1133, 1135 (1991) (citation omitted). They are "primarily questions of law" and "reviewed *de novo.*" *Doolittle v. Meridian Joint Sch. Dist. No. 2*, 128 Idaho 805, 811, 919 P.2d 334, 340 (1996).

In *Long v. Hendricks*, 117 Idaho 1051, 793 P.2d 1223 (1990), this Court concluded that because the judgment debtors "conditioned their tender by requiring Long personally to sign a satisfaction of judgment, the tender did not conform to the procedure provided in I.C. § 10–1115." *Id.* at 1053, 793 P.2d at 1225. The deposit in *Long* authorized the clerk to release the funds tendered only "upon the presentation of a Satisfaction of Judgment duly executed by [Long]." *Id.* at 1052, 793 P.2d at 1224. In *Curtis v. Canyon Highway District No. 4*, 122 Idaho 73, 831 P.2d 541 (1992), *overruled on other grounds by Lawton v. City of Pocatello*, 126 Idaho 454, 886 P.2d 330 (1994), the Court concluded that the judgment debtor complied with I.C. § 10–1115 because it actually tendered the amount of the judgment. The Court noted that the fact the judgment debtor's cross-appeal involved the possibility of a new trial did not affect the question of whether the tender complied with I.C. § 10–1115. *Id.* at 81, 831 P.2d at 549.

Rosalia contends that Searle's deposit with the trial court was not an I.C. § 10–1115 satisfaction because it was conditional, was insufficient to satisfy the judgment ultimately rendered, and was actually the bond required to further extend the stay of execution.

Although the draft itself bore the notation that it was "in settlement of any and all claims against Searle Brothers resulting from crop loss claims," the letter accompanying Searle's draft stated that the draft was "in satisfaction of the existing judgment" and that the judge was "still deliberating the post-trial motions, so the final amount of the judgment may change." The letter also stated that "[u]pon receipt of the Judge's final judgment, we [Searle] will forward any additional monies required, or request reimbursement of any excess monies."

I.C. § 10–1115 does not require a judgment debtor to provide additional documents or complete certain procedures in order to satisfy a judgment. The judgment debtor need only "pay the amount due on such judgment to the clerk of the court in which such judgment was rendered...." I.C. § 10–1115. Nevertheless, we must examine all of the documents transmitted to the clerk with Searle's deposit to determine whether the deposit was conditional. *See Long v. Hendricks*, 117 Idaho at 1052, 793 P.2d at 1224 (determining that the satisfaction was conditional from the language of the notice of tender that accompanied the payment). The conditional language on the draft could not have been enforced by Searle because the letter accompanying the draft demonstrates Searle's willingness to pay additional monies if necessary and overrides the conditional language contained on the draft. The clerk is not the judgment creditor's agent, and the clerk's indorsement does not bind Rosalia to the condition on the draft. We conclude that Searle's deposit, when viewed as a whole, was not conditional because the accompanying letter clearly indicates Searle's intent to satisfy the judgment and to send additional monies if necessary.

Citing *Brinkman v. Aid Insurance Company*, 115 Idaho 346, 766 P.2d 1227 (1988), Rosalia contends that the deposit was not an effective tender of judgment because the amount deposited ($573,010.35) was less than the amount ultimately found due by the court on remand ($695,335.55). *Brinkman* was not a tender case, however. Searle's deposit satisfied the judgment as it then existed. At the hearing on the motion to stay execution,

Searle's attorney stated: "[t]he insurance carrier has indicated that they may, depending on what the judgment is, simply cut a check in the amount of the judgment and tender it to stop any post-judgment interest."

## B. The satisfaction halted the accrual of all interest.

█ Rosalia asserts that I.C. § 10–1115 does not halt the accrual of prejudgment interest and that the statute does not apply in the present case because there was no judgment that Searle could have satisfied after the underlying judgment was reversed by this Court on appeal. We disagree.

Rosalia mischaracterizes this Court's decision in *Weaver I*. The Court did not completely reverse the trial court's judgment in *Weaver I*. Instead, the Court upheld the trial court's entire judgment except for its failure to award prejudgment interest and ordered an additional award of prejudgment interest. The trial court's judgments regarding the indemnification award, consequential damages, and costs were viable judgments and capable of satisfaction by an I.C. § 10–1115 tender of judgment. In addition, the language of I.C. § 10–1115 does not limit its application to postjudgment interest. We are convinced that the rationale expressed in our decisions applying I.C. § 10–1115 to postjudgment interest require us to apply the statute to halt the accrual of prejudgment interest as well.

█ In *Curtis*, the Court denied the judgment creditor statutory postjudgment interest because the judgment debtor actually tendered the amount of the judgment, which the judgment creditor refused to accept. The Court stated:

Our rule is clear: "When a judgment debtor wishes to cut off the accrual of post judgment interest, the tender of the amount of the judgment is sufficient." *Long*, 117 Idaho at 1054, 793 P.2d at 1226. The record shows that respondent tendered the amount of the judgment to appellant, thus complying with I.C. § 10–1115, appellant refused to accept the tender, and the parties later stipulated to the deposit of the check into an interest-bearing account. This having satisfied the

*Long* rule, respondent is not required to pay statutory interest on the judgment during the pendency of this appeal.

*Curtis,* 122 Idaho at 81, 831 P.2d at 549. The *Curtis* judgment creditor contended that she was entitled to postjudgment interest under *Long* because the judgment debtor's cross-appeal involved the possibility of a new trial. The rule, however, is that if the judgment creditor's appeal, not the judgment debtor's appeal, involves the possibility that the judgment creditor might receive less than the amount tendered, then postjudgment interest will cease to accrue after the date of the tender. *Long,* 117 Idaho at 1054, 793 P.2d at 1226.

*Long* is inapplicable to the present case because Rosalia, in its original appeal, did not risk receiving less than the amount tendered. Also, the fact that Searle's original cross-appeal could have resulted in Rosalia's ultimately receiving less does not factor into the analysis in *Long.* Even though *Long* does not apply to the present case, however, some of the Court's statements in *Long* are relevant to our analysis:

> The rationale for this conclusion [denial of post judgment interest] is that if Long had accepted the tendered amount and had been allowed to continue with his appeal, he might eventually have been determined to be entitled to less than what he had received. In that case, at the time the subsequent judgment was entered he might not have had the amount he received from the Hendrickses and might have been insulated from their efforts to recover the overpayment.

> When a judgment debtor wishes to cut off the accrual of post judgment interest, the tender of the amount of the judgment is sufficient. If by appealing the judgment creditor is not taking the risk of receiving less than the amount tendered, the judgment creditor may accept the tendered amount and continue with the appeal. If, however, as in this case, the judgment creditor appeals ... and takes the risk of receiving less than the tendered amount, it is unfair to require the judgment debtor to pay post judgment interest after the date of the tender. The judgment debtor has

no effective way of eliminating the obligation for postjudgment interest except by the tender. Having chosen to appeal and reject the tender, the judgment creditor should not be heard to complain about the lack of post judgment interest.

*Id.* at 1054, 793 P.2d at 1226. The rationale underlying *Long* indicates that the satisfaction should halt the accrual of not only postjudgment interest but also prejudgment interest as of the date of the deposit. After a judgment debtor unconditionally satisfies the judgment, both prejudgment and postjudgment interest should cease.

### III.

### EQUITY DOES NOT REQUIRE ROSALIA TO RECEIVE POSTJUDGMENT INTEREST ON THE ACCRUED PREJUDGMENT INTEREST.

Rosalia asserts that equity demands that it receive postjudgment interest on the accrued prejudgment interest from the date of Searle's deposit until the date of an amended judgment following any remand in this appeal. We disagree.

Our decision in *Weaver I* to grant Rosalia prejudgment interest on the indemnity award was based on equitable considerations. We noted that "[i]n the area of prejudgment interest, equitable principles are emphasized." *Weaver I,* 129 Idaho at 501, 927 P.2d at 891 (citing *Chenery v. Agri–Lines Corp.,* 115 Idaho 281, 289, 766 P.2d 751, 759 (1988)). In reaching our conclusion that "it would be inequitable not to award Rosalia prejudgment interest," we noted that "Rosalia was required to defend against the growers' action and paid for the damages that were ultimately determined to be the fault of Searle...." *Weaver I,* 129 Idaho at 501, 927 P.2d at 891. As evidenced by our opinion in *Weaver I,* Rosalia had a right to prejudgment interest but no judgment reflected this right until the second amended judgment, or because "the trial court judgment was reversed on appeal, ... [it] bears interest only from the date of the [second amended] judgment." *Mitchell II,* 96 Idaho at 238, 526 P.2d at 843.

■ In the present case, there was no award of prejudgment interest that could accrue postjudgment interest until the trial court's second amended judgment because when the denial of an award is reversed on appeal, that award can bear interest only from the date of the subsequent judgment on remand. *See Mitchell II,* 96 Idaho at 238, 526 P.2d at 843. It would be inappropriate for this Court to direct entry of a judgment *nunc pro tunc* for the prejudgment interest. Our Court of Appeals, in *Ward v. Lupinacci,* 111 Idaho 40, 720 P.2d 223 (Ct.App.1986), stated the following:

> It is widely held that such judgments may be entered in furtherance of justice where failure to enter an earlier judgment was due to accident, excusable oversight or mistake. However, it also has been stated that a judgment may not be given nunc pro tunc effect to correct a judicial error, as opposed to a clerical error; neither may it contain a rule and recite an event that did not actually occur.

*Ward* at 42, 720 P.2d at 225 (citations omitted). This Court, in *Westmont Tractor Co. v. Estate of Westfall,* 112 Idaho 712, 735 P.2d 1023 (1987), examined the *Ward* court's discussion of *nunc pro tunc* judgments and noted that under *Ward,* the issue of *nunc pro tunc* relief turned upon a determination of intent: "[i]n all the cases discussed by the Court of Appeals, the district court intended to enter judgment against a party, but due to a judicial accident, excusable oversight, or mistake, the judgment was entered incorrectly; so, a *nunc pro tunc* entry was used to correct the error." *Westmont* at 714, 735 P.2d at 1025. In *Westmont,* the Court noted that "justice requires the entry of judgment *nunc pro tunc* because '[n]o unfair prejudice from such relief has been shown by the defendants.'" *Id.* (citing *Ward* at 43, 720 P.2d at 226).

■ This Court also examined the use of *nunc pro tunc* judgments in *Long.* In that case, the trial court awarded Long damages but denied him a new trial. Long appealed the denial of the new trial as well as elements of his damages. On remand, Long requested that any additional special damages be added *nunc pro tunc* to the original judgment. The trial court increased the amount of medical expenses and lost wages that had been awarded in the original judgment but declined to enter either judgment *nunc pro tunc.* This Court affirmed the trial court's decision that Long was not entitled to interest from the date of the original judgment on the additional lost wages awarded on remand because "the amount of the additional lost wages was [not] ascertainable prior to the proceedings on remand." *Long,* 117 Idaho at 1054, 793 P.2d at 1226. Concerning the denial of interest on the additional award of medical expenses, however, the Court noted that the trial court may have failed to include them because of oversight. The Court concluded that "[t]he amount of the additional medical expenses was liquidated" and that "interest should have been awarded on the amount of the additional medical expenses from the date of the original judgment." *Long,* 117 Idaho at 1055, 793 P.2d at 1227. The rationale expressed in *Long* cannot apply to the present case because *Long* corrected an oversight of the trial court, which is tantamount to a clerical error. Rosalia asks us to correct a judicial error. In addition, the judgments for lost wages and additional medical expenses in *Long* were modified judgments—the original judgment contained judgments for lost wages and medical expenses and they were merely modified upwards on appeal. The judgment for prejudgment interest was a new judgment entered on remand after this Court reversed the denial of prejudgment interest.

In the present case, the trial court never intended to award Rosalia prejudgment interest as of the date of the original judgment. Using *nunc pro tunc* in this manner would be correcting a judicial error, as opposed to a clerical error, which our cases prohibit. *See Annest v. Conrad–Annest, Inc.,* 107 Idaho 468, 470, 690 P.2d 923, 925 (1984) (concluding that the "orders of the district court cannot be considered to be nunc pro tunc, since they do not correct a 'clerical error' but rather appear to substantially alter the nature and effect of the judgment"). In addition, a *nunc pro tunc* judgment would "contain a rule [and] recite an event that did not actually occur." *Ward* at 42, 720 P.2d at 225. We conclude that it would be inappropriate to direct the trial court to enter a judgment

awarding prejudgment interest as of the date of the original judgment so that post-judgment interest would accrue from that date.

Rosalia has invited us to create an equitable exception to the rules set forth in the *Mitchell II* when equity is not done because of a mistake made by the trial court. In the present case, they invite us to rule that the trial court's failure to award prejudgment interest in the original judgment requires this Court to grant the relief that they seek, which would be accomplished by following the *Mitchell II* dissent. Because our rule of law concerning awards of interest on remand answers the questions presented by this appeal, an equitable exception is not appropriate.

### IV.

### ROSALIA AND SEARLE FAILED TO COMPLY WITH I.A.R. 35 CONCERNING THEIR REQUESTS FOR ATTORNEY FEES AND COSTS ON APPEAL.

 Rosalia and Searle both requested attorney fees and costs on appeal in their statements of issues in their briefs on appeal, Rosalia pursuant to I.C. § 12–120(3), I.C. § 12–121, I.R.C.P. 44, and I.A.R. 41 and Searle under I.A.R. 40 and 41. However, neither party addressed the issue in the argument section of their briefs as required by I.A.R. 35(a)(6), which requires the argument portion of the brief to "contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes, and parts of the transcript and record relied on." Therefore, we do not address either request.

### V.

### CONCLUSION

We affirm the trial court's amended judgment.

We award Searle costs, but not attorney fees, on appeal.

TROUT, C.J., and SILAK, SCHROEDER and WALTERS, JJ., concur.