# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 46180

| | | |
|---|---|---|
| JOANIE SMITH, | ) | |
| | ) | |
| Plaintiff-Appellant-Cross Respondent, | ) | Boise, November 2019 Term |
| | ) | |
| v. | ) | Opinion Filed: April 28, 2020 |
| | ) | |
| GLENNS FERRY HIGHWAY DISTRICT, | ) | Karel A. Lehrman, Clerk |
| | ) | |
| Defendant-Respondent-Cross Appellant. | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Elmore County. Nancy Baskin, District Judge.

The judgment of the district court is <u>vacated</u> and <u>remanded</u>.

Hepworth Law Offices, Boise, for appellant Joanie Smith. J. Grady Hepworth argued.

Naylor & Hales, P.C., Boise, for respondent Glenns Ferry Highway District. Tyler D. Williams argued.

---

STEGNER, Justice.

This case arises out of a claim for wrongful termination in violation of Idaho's Whistleblower Act, Idaho Code sections 6-2101 to 6-2109. Joanie Smith was employed by the Glenns Ferry Highway District (the District) when she witnessed the District's office manager overpaying herself on several occasions. Smith reported the overpayments to the District's superintendent. Sometime after Smith reported these overpayments, the District terminated Smith's employment. Smith filed suit, alleging adverse employment action in the form of discharge.

During trial, the trial court ruled it would use the jury in an advisory capacity concerning any front pay damages. At trial, the jury returned a special verdict for Smith, awarding her both back pay and front pay. Following the jury's verdict, the trial court rejected the jury's verdict awarding front pay, and entered a reduced award. The trial court reasoned that (1) the jury's verdict with respect to front pay was advisory because front pay is an equitable remedy when awarded in lieu of reinstatement, (2) Smith had not properly pleaded "failure to promote" as an

1

adverse action in addition to discharge, and (3) the jury had incorrectly used an erroneous full-time employment status in calculating front pay. The trial court also reduced Smith's requested attorney fees to an amount less than she had contracted to pay. Smith unsuccessfully moved for post-judgment relief. She now appeals. The District cross-appeals, asserting that the issue of back pay also sounded in equity, and that the trial court should have reduced the jury award of back pay. For the reasons set forth below, we vacate the judgment of the trial court and remand with instructions in accordance with this opinion.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual background.

Smith was hired by the District in August 2007. She was hired on a part-time basis to assist Linda Jensen—the office manager at the District—in managing the office. Smith worked part-time, was paid hourly, and did not enjoy any job-related benefits. Smith typically only worked two days a week, filling in full-time when Jensen went on vacation or when Jensen was ill. Smith's responsibilities increased between 2007 and 2016, except for a brief period in 2009 when she was laid off by the District due to the recession. Even though her employment had been terminated, Smith continued to contribute her time to the District on a volunteer basis. By the end of Smith's employment in 2016, she was working two days a week, eight hours a day.

In March 2016, Jensen announced her "semi-retirement" at a District Commissioner's meeting. Jensen had apparently communicated to the District Commissioners "sometime in February or early March of 2016" that in Jensen's opinion, Smith was not ready to take over as office manager.

In late March 2016, Smith observed Jensen issue herself two payroll checks. The first payroll check purportedly represented Jensen's unused vacation time, while the second purportedly represented Jensen's final paycheck as a full-time employee. However, the checks issued to Jensen exceeded the amount she was lawfully due. In total, the overpayments exceeded $5,000.

Smith reported these payroll errors to Jim Gluch, the District's superintendent. Gluch, in turn, reported the error to the District's Commissioners, and the Commissioners directed Jensen to correct the error by working with the District's accountant to calculate the correct amount due. However, Jensen never contacted the District's accountant, and instead recalculated the amount she thought she owed the District. Jensen deducted this amount from a subsequent paycheck.

2

This was apparently Jensen's only attempt to repay the District for the overpayment and it did not match the amount Smith contends Jensen was over-paid.

Jensen "semi-retired" at the end of March 2016, but was hired as a part-time employee by the District on April 11, 2016. Jensen's part-time employment was on a contract basis for "at least one year." Smith and Jensen continued to share office duties, but following Smith's reporting of Jensen's overpayment, their work relationship deteriorated. During one workday in April 2016, Smith maintained she received a telephone call from Jensen, in which Jensen warned Smith that Smith, Gluch, and the rest of the Commissioners should "watch their back." Jensen also left notes on Smith's desk about work assignments that Smith found to be harassing or offensive.

In May 2016, Smith made a written request to Gluch, who by then was Smith's direct supervisor, for an increase of her hourly wage to $19. The request was presented to the Commissioners in a District executive meeting, where they granted her a pay raise to $18 per hour. The pay raise was to take effect in July 2016. At this meeting, the Commissioners also evidently decided to post an advertisement for Jensen's replacement. On July 20, 2016, an advertisement for the position with the District was posted in the local paper.

Throughout July 2016, Smith spoke with Gluch on several occasions about wanting to retire. On July 17, 2016, Smith posted on Facebook that she had decided to retire.[1] On July 20, 2016, Smith applied for the posted position on the date the classified ad was published. However, sometime in July 2016, she also wrote and placed a letter of resignation in her personnel file, although she did not deliver it to anyone. The letter was dated August 1, 2016, and stated that her last day of work would be August 31, 2016. Sometime between July 20 and July 26, 2016, Smith called Gluch and requested that he remove the letter from her personnel file and shred it. Gluch stated that he would destroy the letter; however, he did not. In addition, he subsequently disclosed the letter's contents to the Commissioners.

Around the time that the contents of the resignation letter were disclosed to the Commissioners, Jensen allegedly found billing errors made by Smith. On or around July 25, 2016, a special executive meeting was held where Jensen spoke with the Commissioners about Smith.

---

[1] The trial court's amended findings of fact stated that Smith made this Facebook post on July 31, 2018. This date is apparently in error.

3

On July 26, 2016, Gluch went to Smith's house and delivered a Notice of Leave with Pay Pending Investigation. The Notice alleged that Smith had "acted, omitted acts, or otherwise performed in ways which are contrary to the expectations or the standard of conduct for Glenns Ferry Highway District employees." No additional details were provided. Gluch testified that Smith was suspended because of the billing errors Jensen had purportedly found, but Smith testified that she believed she had not made any significant errors in her work. A letter from Smith dated July 26, 2016, stated that she had turned in her keys and described the location of paperwork for ongoing projects.

On August 8, 2016, Gluch again went to Smith's house and delivered a Notice of Termination. The Notice of Termination stated only "that it is in the best interests of you and the Glenns Ferry Highway District . . . that your employment be terminated." Smith was paid her normal hours and hourly pay through the end of August.

On August 10, 2016, Smith wrote a letter to Gluch, responding to the Notice of Termination. In this letter she pointed out that the Notice contained no indication why she had been dismissed, and she stated that she was "being [retaliated] against for" reporting Jensen's overpayment to herself in March 2016.

Around September 2016, Lucille Allen was hired by the Commissioners as the office employee. She had applied for the position that had been advertised in the local paper on August 1, 2016. Allen worked thirty-two hours a week initially until Jensen's one-year contract was complete and Allen was fully trained, at which point Allen worked forty hours a week. Allen received benefits and all annual raises awarded to a full-time employee.

Following her termination by the District, Smith looked for comparable employment in the Glenns Ferry area. She was unable to secure employment until August 2017, when she was hired as a substitute teacher for the Glenns Ferry School District on an on-call basis.

**B. Procedural history.**

1. <u>Pretrial pleadings and motions.</u>

On December 12, 2016, Smith filed a complaint against the District. Smith alleged a violation of the Idaho Whistleblower Act, and demanded a jury trial. Smith also requested past and future lost wages and benefits, reinstatement "to a full time position," in addition to costs and fees and other damages.

On December 23, 2016, the District answered the complaint, and also demanded a jury trial. On January 31, 2017, the District and Smith entered into a stipulation of scheduling and planning, agreeing to try the case before a twelve-person jury. District Judge Medema issued a scheduling order on February 13, 2017, setting the case for trial before a jury.[2] Following discovery, the District moved for summary judgment on October 24, 2017. Summary judgment was denied on December 5, 2017.

Shortly before trial was to begin, the District filed a motion in limine and a trial brief. The District's motion in limine primarily sought to preclude Smith from seeking front pay or non-economic damages. The District argued that if front pay were allowed, it should be limited to Smith's actual pay rate as a part-time employee at the time of Smith's termination, and should not include evidence of a full-time salary with benefits. In response, Smith argued that the Idaho Whistleblower Act permitted recovery of "future lost wages," due to the identical language used in the Idaho Human Rights Act, which the Idaho Supreme Court had interpreted to include front pay. Smith also argued that she should be able to present evidence that she would have become a full-time employee with benefits after Jensen retired.

The District's trial brief, in setting forth the issues for trial, echoed several arguments made in its motion in limine. In particular, the District argued that evidence of future wages should be excluded. The District also argued for the first time, and contrary to its Answer and stipulation, that if future wages were permitted, the court—not the jury—should be the factfinder on this issue.

Smith filed proposed jury instructions on January 30, 2018, one of which set forth interrogatories for the jury's special verdict. In Smith's proposed special verdict, Smith asked that the jury identify whether the District had taken adverse action against her by terminating her or by failing to hire her for the bookkeeper position that had been advertised in July 2016. The District subsequently filed objections to the proposed jury instructions, including an argument that the adverse action of "failure to hire" had not been properly pleaded. The District also pointed to its trial brief arguments, stating that the trial court should be the factfinder on "all remedies."[3]

---

[2] Other than this scheduling order, District Judge Baskin presided over this case.
[3] Although the District asserted in its objections to Smith's jury instructions that the trial court should be the factfinder on "all remedies," it directed the trial court to its trial brief for argument and authority, which refers only to the issue of *front pay*.

The trial court held a pre-trial conference on February 2, 2018. As to the issue of whether the Idaho Whistleblower Act allowed an award of front pay, the trial court ruled that front pay could be awarded, construing Idaho Code sections 6-2105 and 6-2106 broadly. However, the trial court reserved ruling on whether Smith could present evidence of lost future wages based on the theory that Smith had not been hired full-time. In particular, the trial court pointed out that it wanted to first "hear the evidence to see if there [was] a basis to allow this argument to be made and whether or not it is or is not a new claim under [Smith's] complaint."

At this pre-trial conference, the trial court also reserved ruling on whether the court or the jury should be the ultimate factfinder on the issue of front pay. The trial court stated, "I would be inclined at this time to have that number [front pay] determined by the jury. Whether I make that an advisory determination for the court or just a jury determination, I haven't ruled on that, but I will before we start."

2. Rulings during trial.

Voir dire began February 6, 2018, without a ruling from the trial court on the outstanding issues. After jury selection was completed but before Smith's opening statement, the trial court stated that it did not find a claim for a second adverse action—failure to promote Smith to the position she had applied for in July 2016—had been alleged in the pleadings. The trial court nevertheless indicated that it would give Smith more time to establish that she had properly pleaded this second claim.

On February 8, 2018, the third day of trial, the trial court heard argument from both parties outside the presence of the jury regarding the scope of testimony of Tom South, Smith's expert on damages, both back and front pay. The trial court first found that there was a legal question as to whether damages for front pay were subject to the same limitations as the equitable remedy of reinstatement. To address this issue, the trial court ruled that the jury would be used to provide an advisory verdict; if the trial court later determined that front pay damages were in effect an equitable remedy, the trial court would modify the verdict and enter its own judgment. Second, the trial court excluded portions of South's testimony concerning front pay damages as being too speculative. In particular, the trial court excluded calculations that assumed that (1) Jensen would have been fired in May 2016, (2) Smith would have replaced Jensen as office manager, and (3) Smith would have received Jensen's full-time salary and benefits. The trial court reasoned that it was too speculative to assume that Smith would have received

6

Jensen's salary and benefits, but nevertheless it would allow evidence of back and front pay reflecting both full-time employment and benefits.[4]

On February 9, 2018, at the close of Smith's case-in-chief, the District moved for a directed verdict; this motion was denied. The District then presented its defense, after which Smith presented no rebuttal. While the jury was excused, the trial court made several rulings on the record. The trial court first ruled that Smith had not properly pleaded the second adverse action in the form of failure to promote Smith. In so ruling, however, the trial court found "that allowing [Smith] to argue damages associated with potential hire at a full-time basis to the jury would adequately cure any failure to specifically allow [Smith] to present that claim." Second, the trial court reiterated that any jury award of front pay would be advisory and the trial court would ultimately decide damages.

On the same day, the trial court heard arguments from both parties about jury instructions. Among other objections, Smith objected to jury instruction No. 23, because the trial court had excluded Smith's proposed language that the District bore the risk of uncertainty created by its own wrongful conduct. This objection was denied.

After the trial court heard and ruled on the jury instructions, the jury was recalled and instructed. During closing argument, Smith contended that, had the District's Commissioners properly investigated Jensen's overpayment, Jensen would have been fired and Smith would have replaced her. Smith also reminded the jury that Allen had started at a full-time capacity when hired in September 2016 and that it had cost the District a significant amount of money to train Allen to replace Jensen. The jury deliberated for two hours before returning a verdict in favor of Smith.

In its verdict, the jury found that Smith had proven the District violated the Idaho Whistleblower Act. The jury found that Smith's damages for back pay were $63,043.92; the jury indicated that it had calculated sixteen hours per week for the period between September 1, 2016, and January 31, 2017, and forty hours per week for the period between February 1, 2017, and January 31, 2018. The jury calculated that Smith had lost full-time employment of forty hours

---

[4] Smith's expert calculated lost wages of $18 per hour in a full-time capacity after May 2016 and included the value of benefits. This, the trial court stated, should be given to the jury because "[i]t is up to the fact finder to determine the reasonable lost wages, compensation and other remuneration and the calculations of the expert . . . could be helpful for the jury to understand those calculations." When asked whether the calculation for future pay could also include benefits, the trial court said it was "a reasonable assumption on the expert's part" to do so because under Idaho Code section 6-2106(4), compensation included "benefits and other remuneration."

per week for three years between February 1, 2018, and January 31, 2021. All told, the jury set Smith's lost front pay at $187,500.

### 3. Post-trial motions and entry of judgment.

The trial court held a status conference on February 16, 2018, to discuss a briefing schedule for the outstanding issues that had arisen during trial. Smith filed a motion for costs and attorney fees on February 28, 2018, with a supporting affidavit and memorandum. The District filed a motion on the verdict.[5]

The trial court held a hearing on both motions on April 3, 2018, taking the parties' arguments under advisement. On May 11, 2018, Smith moved for entry of judgment under I.R.C.P. 58, including a supporting affidavit and memorandum.

The trial court entered its decision, order, and judgment on May 25, 2018. The trial court noted that the jury's award of front pay damages was merely advisory, that front pay was properly in the hands of the trial court when awarded in lieu of reinstatement, and that the Idaho Whistleblower Act limited front pay to the equivalent of the "same position held before the adverse action[.]" As a result, the trial court reduced the jury's award of front pay to $44,622.34.

The trial court then examined the jury's award of back pay damages, concluding that the award was not based on the evidence and appeared excessive because it seemingly "provide[d] that [Smith] was promoted to full-time status with full benefits in February of 2017." However, the trial court observed that the Idaho Whistleblower Act did not contain a provision permitting the trial court to reduce a jury's award of back pay, and accordingly declined to reduce the jury's award of back pay from $63,042.92.

The trial court examined Smith's request for interest on the judgment awarded, concluding that the Idaho Legislature had "not expressly authorized an award of interest against [the District] under the IPPEA [Idaho Whistleblower Act.]" As a result, the trial court rejected Smith's request for post-judgment interest.

The trial court finally discussed Smith's request for attorney fees and costs. The trial court held that, given the factors listed in I.R.C.P. 54(e)(3), Smith's counsel was entitled to $168,177 in attorney fees, instead of the $203,131 requested. Smith was awarded all her requested costs.

---

[5] Smith asserts that there is no Idaho Rule of Civil Procedure for this type of motion. However, the trial court itself suggested the title of the motion in a post-trial hearing, commenting that it didn't "know that the name of the motion matter[ed]."

On June 7, 2018, after judgment was entered, Smith filed a motion for post-judgment relief and a motion for amended findings of fact. Smith moved the trial court to find its facts as required under I.R.C.P. 52(a)(1).

On June 13, 2018, Smith timely filed her notice of appeal. The District cross-appealed on June 29, 2018.

The trial court did not rule on Smith's motions for post-judgment relief and for amended findings of fact for more than six months. On February 25, 2019, the trial court ruled on Smith's motions (for post-judgment relief and for amended findings of fact), entering amended findings of fact and conclusions of law for the purposes of clarifying the record for appellate review. The trial court did not modify the judgment previously entered.

## II.     STANDARD OF REVIEW

"[T]his Court freely reviews conclusions of law, drawing its own conclusions from the facts in the record." *Eller v. Idaho State Police*, 165 Idaho 147, 153, 443 P.3d 161, 167 (2019) (citation omitted). This Court also exercises free review over both constitutional questions and questions of statutory interpretation. *Regan v. Denney*, 165 Idaho 15, 19, 437 P.3d 15, 19 (2019) (quotation omitted). "The propriety of jury instructions is a question of law over which this Court exercises free review[.]" *Van v. Portneuf Med. Ctr., Inc.* (*Van II*), 156 Idaho 696, 701, 330 P.3d 1054, 1059 (2014) (quotation omitted).

"This Court applies an abuse of discretion standard when reviewing a [trial] court's award of attorney fees, and the party appealing an award of statutory attorney fees bears the burden of demonstrating a clear abuse of that discretion." *Berkshire Invs., LLC, v. Taylor*, 153 Idaho 73, 80, 278 P.3d 943, 950 (2012) (citation omitted).

## III.     ANALYSIS

**A. The trial court erred when it ruled that there was no right to a jury trial on the issue of front pay. Consequently, the jury award of front pay should be reinstated.**

Smith filed a Complaint and Demand for Jury Trial on December 12, 2016.[6] The District's Answer also included a demand for a jury trial under I.R.C.P. 38(b). The parties stipulated to a jury trial in January 2017. Judge Medema entered a scheduling order in February 2017, setting the case for a jury trial. Nearly a full year later, on the eve of trial, the District's

---

[6] Smith's complaint itself contains no specific demand for a jury trial; however, the complaint is titled "Complaint and Demand for Jury Trial."

trial brief raised for the first time the question of whether front pay damages should be submitted to a jury.

At the pre-trial conference on February 2, 2018, the District argued that front pay was "in lieu of reinstatement" and as a result should be "treated as an equitable remedy." Smith argued that front pay was a jury issue "because it's money damages." At that time, Smith and the District did not consent to use the jury in an advisory capacity; the trial court reserved ruling on the issue. The trial court did not make a decision about whether the jury verdict on front pay would be advisory until the third day of trial, when it stated that there was still

> a legal question as to whether or not front pay damages under the Whistleblower statute 6-2105 and 6-2106, where it indicates compensation for lost wages, benefits and other remuneration is in fact limited to the same limits as an equitable remedy of reinstatement.
>
> So the [c]ourt intends to address this issue by having an advisory verdict rendered as to damages where the jury will indicate if it is calculating the damages based on full-time employment or part-time employment so that if the [c]ourt determines as a matter of law the front pay damages in the Whistleblower action are limited to the same pay, same position as would reinstatement, then the [c]ourt can make a modification to the verdict at that time or to the judgment at that time.

In an April 3, 2018, post-trial hearing, the trial court observed that it had reserved ruling on "the legal determination of whether front pay is equitable in nature, to be determined by the [c]ourt, or to be determined by the jury." After hearing arguments, the trial court took matters under advisement, and entered its memorandum decision and order on May 25, 2018. The trial court concluded that front pay was the monetary equivalent of the equitable remedy of reinstatement, which a court had the power to grant under Idaho Code section 6-2106(2). Because Idaho Code section 6-2106(2) limited reinstatement "to the same position held before the adverse action, or to an equivalent position[,]" the trial court calculated front pay limited to part-time employment at $18 per hour. *See* I.C. § 6-2106. This resulted in the trial court imposing a significant reduction of the front pay award from $187,500 to $44,622.34.

On appeal, Smith argues that the trial court impermissibly violated her constitutional right to trial by jury when it reduced the jury award of front pay. Smith contends that the Whistleblower Act gives her a right to a jury trial because front pay and back pay fall under "lost wages" available under Idaho Code section 6-2106(4), as well as under "actual damages" available under Idaho Code section 6-2105(2). The District cross-appeals, arguing that not only

10

was there no right to a jury trial on the issue of front pay, but there was also no right to a jury trial on the issue of *back pay*.

### 1. The Idaho Whistleblower Act allows recovery of front pay.

The Idaho Whistleblower Act allows an employee to bring "a civil action for appropriate injunctive relief or actual damages, or both" if she can prove that she suffered an adverse action because she engaged in a protected activity. I.C. § 6-2105(2). The statute authorizes an award of "damages for injury or loss caused by each violation . . . and includes court costs and reasonable attorneys' fees." I.C. § 6-2105(1). A court may order any of the following remedies in rendering a judgment:

> (1) An injunction to restrain continued violation of the provisions of this act;
> (2) The reinstatement of the employee to the same position held before the adverse action, or to an equivalent position;
> (3) The reinstatement of full fringe benefits and seniority rights;
> (4) The compensation for lost wages, benefits and other remuneration;
> (5) The payment by the employer of reasonable costs and attorneys' fees;
> (6) An assessment of a civil fine of not more than five hundred dollars ($500), which shall be submitted to the state treasurer for deposit in the general fund.

I.C. § 6-2106.

Before today, we have not specifically held that an award of front pay is permitted under the Idaho Whistleblower Act. However, we interpret remedial statutes broadly "to satisfy their remedial purposes." *Eller*, 165 Idaho at 156, 443 P.3d at 170. In *Eller*, we held that non-economic damages for emotional distress were part of "actual damages" under Idaho Code section 6-2105 for two key reasons. *Id.* at 156–57, 443 P.3d at 170–71. First, we observed that the Whistleblower Act should be interpreted broadly because it was a remedial statute providing claimants "with a remedy for *all* actual damages, based on *all* claims, including those otherwise available under common law tort claims." *Id.* at 156, 443 P.3d at 170 (italics added). Second, *O'Dell v. Basabe*, 119 Idaho 796, 810 P.2d 1082 (1991), provides precedent of an expansive interpretation of the term "actual damages," albeit under the Idaho Human Rights Act. *Eller*, 165 Idaho at 156, 443 P.3d at 170. In *O'Dell*, we held that "[b]oth back pay and front pay are subsets of the global term, 'lost wages[,]'" where the Idaho Human Rights Act permitted recovery of "actual damages including lost wages" but did not explicitly include "front pay." *O'Dell*, 119 Idaho at 811, 810 P.2d at 1097; *see also* I.C. § 67-5908(3)(c). We followed suit in *Eller*, holding that emotional distress damages were recognized as a form of "actual damages" under the Whistleblower Act. *Eller*, 165 Idaho at 156, 443 P.3d at 170. Third, the Whistleblower Act was

enacted following *O'Dell*, and uses the phrase "lost wages," which we interpreted in *O'Dell* to include both front and back pay. We assume that the legislature has full knowledge of the existing judicial decisions and case law of the state. *Barth v. Canyon Cty.*, 128 Idaho 707, 713, 918 P.2d 576, 582 (1996) (citation omitted). Accordingly, we conclude that the legislature's intent was to include both front and back pay in "lost wages" in Idaho Code section 6-2106(4).

Here, the trial court ruled that front pay could be awarded under the Whistleblower Act. We agree. *See Eller*, 165 Idaho at 156, 443 P.3d at 170; *O'Dell*, 119 Idaho at 811, 810 P.2d at 1097 ("The words 'lost wages' do not differentiate between wages lost before or after trial. This is illustrated by the fact that lost wages are to be awarded as an element of 'actual damages,' which are commonly understood as those actual losses caused by the conduct at issue."). Accordingly, the trial court did not err in ruling that the Whistleblower Act allows recovery of front pay.

> 2. The trial court erred in finding that front pay awarded under the Idaho Whistleblower Act is an equitable remedy.

The trial court ruled that front pay is an equitable remedy and therefore Smith did not have a right to trial by jury on that issue. On appeal, Smith argues that front pay is a subset of "lost wages" under Idaho Code section 6-2106(4), or as "actual damages" under section 6-2105(2), as damages to be decided by a jury. Smith further argues that a cause of action under the Whistleblower Act is most analogous to wrongful discharge actions under the common law, and that the Idaho Constitution preserves her right to a jury trial on damages.

The District counters that it is the "existence of the cause of action itself" that determines whether the right to a jury trial applies. Because the Whistleblower Act did not create the present cause of action until 1994, and because Idaho did not recognize a claim of wrongful discharge in violation of public policy until 1977, there is no right to a trial by jury in these actions. The District also cross-appeals, claiming the trial court incorrectly held that the issue of *back* pay was legal in nature, and as a result should also have reduced the jury's award of back pay.

Article I, section 7 of the Idaho Constitution states that "[t]he right of trial by jury shall remain inviolate[.]" Idaho Const. art. I, § 7. "It is generally recognized that the constitutional right to a jury trial applies only to legal claims and not equitable claims." *Ada Cty. Highway Dist. v. Total Success Invs., LLC*, 145 Idaho 360, 369, 179 P.3d 323, 332 (2008) (citation omitted). This provision "secure[s] that right as it existed at common law when the Idaho Constitution was adopted." *State v. Straub*, 153 Idaho 882, 886, 292 P.3d 273, 277 (2013) (citation omitted); *see*

*also Rudd v. Rudd*, 105 Idaho 112, 116, 666 P.2d 639, 643 (1983). "In determining the question of whether or not parties are entitled to a trial by jury, courts must look to the ultimate and entire relief sought." *Cooper v. Wesco Builders*, 76 Idaho 278, 282, 281 P.2d 669, 671 (1955).

We find there is a right to a jury trial for damages under the Whistleblower Act. We begin our analysis with the Idaho Constitution, which provides that the "right to trial by jury shall remain inviolate[.]" Idaho Const. art. I, § 7. At the time of the adoption of the Idaho Constitution, damages for breach of contract or for physical injuries were issues required to be tried by a jury, as shown in *People ex rel. Brown v. Burnham*, 35 Idaho 522, 525, 207 P. 589, 590 (1922) (citing C. S. § 6837). While at-will employment is a contract terminable by either party, damages can be claimed when "motivation for the firing contravenes public policy." *Jackson v. Minidoka Irrigation Dist.*, 98 Idaho 330, 333, 563 P.2d 54, 57 (1977). The whistleblower cause of action is most analogous to a breach of contract claim in contravention of public policy. *See Van v. Portneuf Med. Ctr.* (*Van I*), 147 Idaho 552, 561, 212 P.3d 982, 991 (2009) (stating that the Whistleblower Act "displaced the common law cause of action for breach of an at-will employment contract premised on the protected activities outlined in the Act.").

We acknowledge that the right to a jury trial does not necessarily attach upon claiming money damages, if the damages are collateral to the ultimate relief sought. *See Summers v. Martin*, 77 Idaho 469, 477–78, 295 P.2d 265, 270 (1956) (claim for damages collateral to an action for land sale contract rescission and restoration did not give plaintiffs a right to a jury trial); *Rees v. Gorham*, 30 Idaho 207, 212, 164 P. 88, 89 (1917) (claim for damages collateral to action to cancel a mortgage and force delivery of title did not give plaintiff a right to a jury trial); *but see David Steed & Assoc., Inc. v. Young*, 115 Idaho 247, 249–50, 766 P.2d 717, 719–20 (1988) (legal issues raised by compulsory counterclaims *did* inhere a right to a jury trial). However, damages in actions under the Whistleblower Act are sufficiently analogous to breach of contract damages, which were recognized as an issue for jury trial under the territorial statutes. *See Burnham*, 35 Idaho at 525, 207 P. at 590 (citing C. S. § 6837). "[C]ompensation for lost wages, benefits and other remuneration" is language which suggests a legal remedy (as opposed to an equitable remedy). I.C. § 6-2106(4). While there is nothing in the statute explicitly addressing the authorization of a jury trial, there is nothing to suggest that a bench trial must occur, unlike the Human Rights Act, which requires a bench trial "unless either party shall move for a jury trial." I.C. § 67-5908(1).

The District argues that back pay is an equitable remedy and as such it should have been decided by the trial court, not the jury. Because there is a right to a jury trial for damages sought in Whistleblower Act claims, the District's argument that the trial court should have treated the jury's verdict on back pay as advisory is unpersuasive. Back pay is a legal remedy as compensation for lost wages when a government employer takes adverse action against an employee in retaliation for that employee's protected activity. *See* I.C. §§ 6-2105(1), 6-2106(4). Accordingly, an employee seeking back pay damages is entitled to have a jury decide this issue.

Neither are we persuaded that front pay should be treated any differently than back pay. We recognize that the federal approach is to classify front pay awarded under Title VII as equitable; however, we decline to adopt this approach for several reasons. First, the Whistleblower Act and the Civil Rights Act are structurally different in the remedies authorized. Title VII does not generally provide for back pay and other economic damages, implicitly preferring equitable relief in the form of reinstatement. *See* 42 U.S.C. § 1981a(b)(2), (c); 42 U.S.C. § 2000e-5(g)(1); *see also Gotthardt v. Nat'l R.R. Passenger Corp.*, 191 F.3d 1148, 1153 (9th Cir. 1999). The Whistleblower Act allows for "any or all" of the remedies listed in Idaho Code section 6-2106, including the broad language "compensation for lost wages, benefits and other remuneration." Second, achieving justice under these federal anti-discrimination causes of action required impartial fact-finders, which would have been far less likely if left to a jury at the time the Civil Rights Act was passed. *See* Note, Jones v. Mayer*: The Thirteenth Amendment and the Federal Anti-Discrimination Laws*, 69 COLUM. L. REV. 1019, 1051–52 (1969); *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 446–47 (1968) (Douglas, J., concurring). The potential of racial discrimination is not a basis undergirding the creation of the Idaho Whistleblower Act. Rather, the purpose of the Whistleblower Act is "to protect the integrity of government by providing a legal cause of action for public employees who experience adverse action from their employer as a result of reporting waste and violations of a law, rule or regulation." I.C. § 6-2101. We do not perceive any fear that a jury will somehow be reluctant to award appropriate compensation when a governmental employee suffers an adverse employment decision "as a result of reporting waste and violation of a law, rule or regulation." *Id.* Finally, and importantly, this Court is free to interpret the protections of the Idaho Constitution as more protective than the United States Constitution. *See Garcia v. State Tax Comm'n*, 136 Idaho 610, 614, 38 P.3d 1266, 1270 (2002) (citation omitted).

Much has been made by the District and the trial court of "front pay" being a remedy in lieu of reinstatement. Clearly reinstatement is an equitable remedy over which the court alone holds control. However, allowing an award of front pay as an *alternative* to reinstatement does not somehow transform front pay into an equitable remedy. Front pay is an alternative to reinstatement "where reinstatement is made unreasonable by hostility between the parties[.]" *O'Dell*, 119 Idaho at 812, 810 P.2d at 1098 (citation omitted). The impracticality of forcing parties back into a fractured employment relationship does not somehow transform front pay—money damages—into an equitable remedy rather than a legal remedy. Front pay is offered as a legal alternative, not as an equitable replacement.

Accordingly, the trial court erred as a matter of law in holding that Smith was not entitled to have the jury decide the issue of front pay. The issues of front and back pay should have been left in the hands of the jury as a matter of state constitutional law and statutory interpretation. Idaho Rule of Civil Procedure 39(c) only allows an advisory jury to be used "[i]n an action *not triable of right by a jury*." (Italics added).

The trial court's decision to treat the jury's verdict on the issue of front pay as only "advisory" violated Smith's constitutional right to a trial by jury. This decision affected Smith's substantial rights because the trial court subsequently decreased the front pay award by more than 75%. Accordingly, the trial court's grant of the District's "Motion on the Verdict" is reversed, and the case is remanded with instructions to reinstate the jury verdict.

## B. The trial court erred by refusing to include the adverse action of "failure to hire" in the jury instructions and special verdict form; however, this error did not prejudice Smith.

Smith argues on appeal that the trial court erred with respect to several jury instructions that were given. When there is a right to a jury trial below, this Court reviews refusal to give an instruction to determine

> whether there is evidence at trial to support the instruction, and whether the instruction is a correct statement of the law." *Mackay v. Four Rivers Packing Co.*, 151 Idaho 388, 391, 257 P.3d 755, 758 (2011). A requested instruction must be given if there is any reasonable view of the evidence to support it. *Bailey v. Sanford*, 139 Idaho 744, 750, 86 P.3d 458, 464 (2004).

*Van II*, 156 Idaho at 701, 330 P.3d at 1059. "A requested jury instruction need not be given if it is either an erroneous statement of the law, adequately covered by other instructions, or not supported by the facts of the case." *Ballard v. Kerr*, 160 Idaho 674, 702, 378 P.3d 464, 492

15

(2016) (quotation omitted). "Even where an instruction is erroneous, the error is not reversible unless the jury instructions taken as a whole mislead or prejudice a party." *Mackay*, 151 Idaho at 391, 257 P.3d at 758 (citation omitted).

Smith's Complaint and Demand for Jury Trial alleged that she had been fired for reporting Jensen's overpayment, and that Smith had been replaced by a less experienced full-time employee. Smith demanded "past and future lost wages and benefits she would have been entitled to as a full-time employee[.]" When Smith submitted her jury instructions a week before trial was set to begin, she included a jury instruction which explained the special verdict form. This instruction asked if the District had taken adverse action against Smith by terminating Smith's employment, or by failing to hire Smith for "the full-time bookkeeper position advertised in July 2016." The instruction also asked the jury to identify which actions the District took because of Smith's protected activity. The District objected to these specific questions being on the special verdict, arguing that Smith had not alleged more than termination in her complaint. At the pretrial conference, the trial court reserved its ruling as to the jury instruction, but did not provide much analysis.[7] Later, after jury selection and before the opening instructions were read, the trial court expressed its concern that Smith had not stated a claim for the separate adverse action of failure to hire or promote. The trial court nonetheless allowed Smith more time to point to the pleadings where this had been alleged.

On the last day of trial, the parties and the trial court met for a jury instruction conference, when the trial court made a finding on the record that

> there was only one adverse action that [Smith] was seeking to recover on and that that was termination, but that the Court would allow [Smith] to argue that the damages associated with the identified and pled adverse action of termination would include that [Smith] . . . could have been hired for more hours and possible benefits but for her participation in the stipulated protected activity.

---

[7] The transcript is unclear about exactly *which* issue was being discussed (the instruction itself or evidence of damages based on Smith not being hired for the full-time position), as immediately after the discussion of what adverse actions had been pleaded, the trial court said,

> I'm going to reserve my ruling as to damages, but you're not going to be able to go into, we're going to present all these damages and all these scenarios in your opening because I don't know that I'm going to allow you to do that or not because I am worried about being constrained to the language in the statute.

The "scenarios" referenced appear to be the various calculations made by Smith's damages expert, one of which included a full-time position at Jensen's salary and benefits. Another "scenario" consisted of full-time employment at Smith's hourly wage, which appears to be what the jury used.

16

The trial court indicated that the complaint did not "put [the District] on notice that [Smith] was seeking adverse actions in the form of failure to promote[.]" However, the trial court also observed that "allowing [Smith] to argue damages associated with potential hire at a full-time basis to the jury would adequately cure any failure to specifically allow the plaintiffs to present that claim."

On appeal, Smith asserts that her pleadings provided proper notice that she was seeking full-time wages. Accordingly, Smith argues that the jury should have been asked to determine whether Smith was entitled to damages for the full-time position. Smith asserts that it was "legal error not to properly instruct the jury on the issue under Idaho's liberal notice pleading standard." The District argues that the trial court properly found that Smith failed to plead a second adverse action, and that accordingly the instruction concerning the failure to promote or hire Smith to the full-time position was properly refused.

Idaho's "notice pleading" system requires a plaintiff's complaint to "state an underlying cause of action and the facts from which that cause of action arises." *Navo v. Bingham Mem'l Hosp.*, 160 Idaho 363, 375, 373 P.3d 681, 693 (2016). "Notice pleading frees the parties from pleading particular issues or theories, and allows parties to get through the courthouse door by merely stating claims upon which relief can be granted." *Cook v. Skyline Corp.*, 135 Idaho 26, 33, 13 P.3d 857, 864 (2000) (citation omitted). A defendant's response to facts, issues, or theories raised by the plaintiff can signal the defendant's acknowledgment of claims. *See, e.g.*, *Seiniger Law Office, P.A. v. N. Pac. Ins. Co.*, 145 Idaho 241, 247, 178 P.3d 606, 612 (2008) (finding proper notice when defendant raised affirmative defense in answer and moved for summary judgment on that claim); *Navo*, 160 Idaho at 375, 373 P.3d at 691 (finding proper notice when defendant addressed plaintiff's claim in its motion for summary judgment).

The trial court erred when it refused to give an instruction concerning the second adverse action of failure to hire. From the outset of the case, Smith contended that her damages should include wages based on full-time employment. Smith's complaint clearly alleged that she was seeking "past and future lost wages and benefits she would have been entitled to as a full time employee." In its motion for summary judgment in November 2017, the District attacked Smith's claim "that she would take over Jensen's prior job completely and become the full-time office manager, though there is no indication that any commissioner promised her the position." Smith continued to assert that her position would have continued and would have become full-

17

time after Jensen retired. Accordingly, the District was on notice of a claim for damages based on full-time employment because it responded to and attacked this claim. Notably, Smith's original theory for claiming damages for future pay based on full-time hours was based on the assumption that after Jensen's retirement, Smith would have become a full-time employee. Even though Smith's complaint clearly asserted a claim for damages based on full-time employment, additional facts supporting the claim were not revealed until late in the discovery stage.[8]

Further, there was sufficient evidence presented at the trial to support Smith's claim of an adverse action of not being hired for the full-time position. Smith testified she believed that her application was filed with the District, conceding she did not have an expectation she would be given the job merely because she filed an application for it. Gluch testified he knew Smith had not been called in for an interview, but did not know whether Smith's application had been considered. Riggs indicated that Smith's application had not been considered because Smith had put in her resignation, and because the Board of Commissioners subsequently voted to terminate her. Commissioner Dewey Crane's testimony corroborated these statements. Riggs also testified that, prior to being told that Smith had written a letter of resignation, Smith

> had a good chance [for Linda Jensen's job] because we were putting out the applications and that is why we told her that she had every opportunity to apply for the job. And she actually, you know, as far as I was concerned, she actually was a front runner because if we were not to have any other – if we were not to have any other applicants then Joanie would have had the job.

In addition, the jury evidently considered—and rejected—the District's contention that Smith's employment had been terminated only because she had resigned. Based on the testimony at trial, a reasonable view of the evidence suggests that the District's contention—that Smith's application had not been considered because she had resigned—did not ring true. *See Bailey*, 139 Idaho at 750, 86 P.3d at 464 ("A requested instruction must be given if there is any reasonable view of the evidence to support it.") (citation omitted). Finally, the District terminated Smith's part-time position. Consequently, no part-time position existed when the case was tried. Because there was no part-time employment available, the facts presented to the jury indicated the only potential employment at the District was full-time.

---

[8] During the deposition of Harley Riggs, one of the District's commissioners, he testified that the Board had never received Smith's application for the full-time position. In response to the District's later motion for summary judgment, Smith filed another affidavit, indicating that Jensen had somehow prevented Smith's application from being considered by the District. Before Riggs' deposition, Smith evidently did not know that her application had never been considered for the full-time position.

Taking all of these factors into consideration, the trial court erred in ruling that there was insufficient evidence to support an instruction about the District's failure to hire Smith.

Notwithstanding the trial court's errors concerning an additional adverse action and the rejected jury instruction, this series of rulings did not prejudice Smith. *See Mackay*, 151 Idaho at 391, 257 P.3d at 758. First, in the trial court's ruling concerning the adverse action of failure to hire or promote, it indicated that Smith was still entitled to present damages based on potential full-time employment: "Additionally, the Court finds that allowing [Smith] to argue damages associated with potential hire at a full-time basis to the jury would adequately cure any failure to specifically allow [Smith] to present that claim." Because of the way in which the trial court allowed the jury to consider full-time employment, and because the jury's verdict is to be reinstated, Smith has not been prejudiced.

Second, the jury instructions themselves did not guide the jury to disregard any evidence of full-time employment. While the instructions only refer to termination as the adverse action Smith was seeking to prove,[9] the instruction on damages told the jury to determine

> the amount of money that will reasonably and fairly compensate Ms. Smith for any of the following actual damages proved by the evidence to have resulted from the [District's] wrongful conduct:
> (1) The reasonable value of the past income lost as a result of the [District's] wrongful conduct;
> (2) The reasonable value of future income lost as a result of the [District's] wrongful conduct.
> Whether Ms. Smith has proved any of these damages to a reasonable degree of certainty is for you to decide.

Further, the instruction on future lost income did not restrict the jury in its calculation to part-time employment, but listed factors the jury should consider, including "the length and type of prior employment[.]"

Finally, the special verdict form filled out by the jury indicated that it was calculating damages for back pay based on part-time employment between September 1, 2016, and January 31, 2017, and for full-time employment between February 1, 2017, and January 31, 2018. The jury also used full-time employment in its calculation of front pay between February 1, 2018, and January 31, 2021. In both calculations, Smith's hourly rate of $18 per hour was used. The

---

[9] Instruction No. 5 (describing the case) only referred to "the adverse action of terminating [Smith's] employment." Instruction Nos. 10 and 21 (parties' stipulated facts and at-will employment, respectively) referred only to "termination" as the adverse action.

jury clearly concluded in its determination of front pay that Smith would have been employed at forty hours a week.

Accordingly, Smith was not prejudiced by the trial court's ruling that she had not properly pleaded additional adverse actions taken by the District, and the trial court's subsequent decision not to add the "failure to hire" instruction or include this adverse action on the special verdict form.

### C. The trial court erred by failing to instruct the jury on the "risk of uncertainty" to be borne by the District in its determination of damages; however, this error did not prejudice Smith.

Smith also challenges the trial court's decision not to include language about the "risk of uncertainty" in Instruction No. 23. During the jury instruction conference on the last day of trial, Smith objected to Instruction No. 23, having requested that the trial court include "the language of *Griffith versus Clear Lakes* citing to *Smith versus Mutton*[10] [sic] that this defendant bears the risk of the uncertainty which the defendant has created by its own wrongful conduct." The trial court denied Smith's objection, evidently confusing our *Smith v. Mitton* case with a 1946 United States Supreme Court case, *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251 (1946). The trial court reasoned:

> [T]hat language does cite a principle, but it is not included in the standard ICJI [sic] instructions. That case has been around, the 1946 case, for a significant amount of time. But in the more recent Idaho case cited, *the Griffith case*, that is 2007. ICJI [sic] has not been revised to include that language. That language is not mandatory under the law from the Supreme Court. The Court finds that the ICJI [sic] instruction included in the Court's instruction is [an] adequate definition of the types of damages the jury can consider.
> Your objection is noted and denied.

(Italics in original.)

Smith argues that the "risk of uncertainty" language should have been included in Instruction No. 23. The District responds that Smith never filed a proposed jury instruction containing this language, and cites *Robert V. De Shazo & Associates v. Farm Management Services, Inc.*, 101 Idaho 154, 155, 610 P.2d 109, 110 (1980) (per curiam), for the proposition that if the instruction given was "a correct statement of the law, as far as it goes, a party cannot

---

[10] Apparently, Smith was referring to *Smith v. Mitton*, 140 Idaho 893, 105 P.3d 367 (2004). *Mitton* stands for the principle that "[t]he most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." *Id.* at 900, 104 P.3d at 374 (quotation omitted).

complain on appeal of a failure to give additional, more explicit instructions if none were requested below."

Generally, "[a] requested instruction must be given if there is any reasonable view of the evidence to support it." *Bailey*, 139 Idaho at 750, 86 P.3d at 464 (quotation omitted). However, "[a] requested jury instruction need not be given if it is either an erroneous statement of the law, adequately covered by other instructions, or not supported by the facts of the case." *Ballard*, 160 Idaho at 702, 378 P.3d at 492 (quotation omitted).

Here, the trial court erred in refusing to instruct the jury on the "risk of uncertainty." The language from *Mitton* that Smith requested in Instruction No. 23 constitutes an accurate statement of the law applicable to the jury's calculation of an award of future lost wages. *See Mitton*, 140 Idaho at 900, 104 P.3d at 374. The trial court instead found that the IDJI instruction "adequately defin[ed]" the issue, but in so doing, the trial court confused the recent *Mitton* case with a 1946 United States Supreme Court case. Accordingly, the trial court erred in refusing to include the "risk of uncertainty" language Smith requested.

Further, the District's reliance on *De Shazo & Associates* is misplaced. In *De Shazo & Associates*, this Court rejected an appellant's argument that the trial court erred by failing to give a more specific jury instruction instead of a general instruction that properly stated the law because the appellant had not requested a more specific instruction below. *De Shazo & Assocs.*, 101 Idaho at 155, 610 P.2d at 110. Here, while Smith never proposed a jury instruction with the "risk of uncertainty" language, Smith objected during the jury instruction conference to the trial court's failure to include the language. The trial court then overruled the objection. Accordingly, *De Shazo & Associates* does not bar Smith's request for the instruction.

Regardless of the error in refusing to instruct the jury on the "risk of uncertainty," for the reasons we articulated above, there is no indication that this omission ultimately prejudiced Smith. The jury instruction given, No. 23, reflected a correct statement of the law requiring Smith to establish damages with "reasonable certainty." Instruction No. 25 also defined "reasonable certainty" as not requiring "absolute assurance nor mathematical exactitude." The jury then awarded damages that reflected, in large part, full-time employment for both back and front pay. Smith was not prejudiced by the failure to instruct the jury on the "risk of uncertainty," because the jury verdict is to be reinstated.

**D. The trial court erred in denying Smith post-judgment interest on the judgment awarded below.**

In a post-trial motion, Smith requested post-judgment interest under Idaho Code section 28-22-104 and I.R.C.P. 54(a). The trial court denied this request on the basis that sovereign immunity protected the District from being assessed post-judgment interest.

On appeal, Smith asserts reversible error because the cases relied on by the trial court apply only to *pre*-judgment interest. Smith asserts that the equitable principles underlying *pre*-judgment and *post*-judgment interest differ. The District counters that the principles in pre-judgment interest cases cited by the trial court "apply with equal force to post-judgment interest." Our case law makes it clear that the District is obligated to pay post-judgment interest.

This Court has identified that equitable principles allow post-judgment interest to be imposed against a governmental entity. For instance, in *Ada County v. Red Steer Drive-Ins of Nevada, Inc.* (*Red Steer*), 101 Idaho 94, 100, 609 P.2d 161, 167 (1980), this Court granted the appellant post-judgment interest against Ada County on a refund of tax overpayments. This Court determined that there were no statutes "expressly exempting the state or any of its political subdivisions from paying interest on amounts due as a result of a judgment rendered against those entities." *Id.* This Court reasoned that "[i]t would be inequitable to create a special status for the state or its subdivisions whereby the county could avoid the payment of interest, but where private parties would be required to make such payments." *Id.* On the other hand, we did not allow recovery of pre-judgment interest in *University of Utah Hospital & Medical Center v. Twin Falls County*, 122 Idaho 1010, 1018, 842 P.2d 689, 697 (1992), reasoning that the presumption of sovereign immunity barred collection of pre-judgment interest without a specific assertion by the legislature.

Here, the trial court erred in declining to award Smith post-judgment interest on the judgment awarded. Smith sought post-judgment interest under Idaho Code section 28-22-104, the same statutory provision at issue in *Red Steer*, where this Court permitted post-judgment interest against a governmental entity. *Red Steer*, 101 Idaho at 100, 609 P.2d at 167. Accordingly, the trial court erred as a matter of law, and Smith is therefore entitled to post-judgment interest on the judgment awarded below.

**E. Smith's request for entry of judgment *nunc pro tunc* is declined; however, on remand the trial court is to determine whether judgment *nunc pro tunc* should be entered as of the date of the jury's verdict.**

Smith requests that this Court enter judgment *nunc pro tunc* to the date the special verdict was returned, February 9, 2018. Having determined that the jury's award of front pay was advisory, the trial court waited for briefing from the parties before entering its judgment on May 25, 2018. The District has argued that a judgment *nunc pro tunc* is unnecessary because post-judgment interest is not permitted under the doctrine of sovereign immunity.[11]

"*Nunc pro tunc* literally means 'now for then.' . . . In the present context, the phrase indicates that a judgment should be given retroactive effect to a designated date." *Westmont Tractor Co. v. Estate of Westfall*, 112 Idaho 712, 714, 735 P.2d 1023, 1025 (1987). This Court may enter judgment *nunc pro tunc* to correct a clerical error, such as where a trial court "intended to enter judgment against a party, but due to a judicial accident, excusable oversight, or mistake, the judgment was entered incorrectly[.]" *Weaver v. Searle Bros.*, 131 Idaho 610, 615, 962 P.2d 381, 386 (1998) (quoting *Westmont Tractor Co.*, 112 Idaho at 714, 735 P.2d at 1025). It is inappropriate for this Court to enter judgment *nunc pro tunc* to correct a *judicial error*, not a clerical error. *Weaver*, 131 Idaho at 615–16, 962 P.2d at 386–87.

As noted, the trial court erred in denying post-judgment interest. However, even though Smith is entitled to post-judgment interest, we decline Smith's invitation to enter a judgment *nunc pro tunc* because doing so would correct a *judicial error*. Nevertheless, on remand the trial court should consider whether judgment *nunc pro tunc* should be awarded as of the date of the jury's verdict. Consequently, we remand this case with instructions for the trial court to determine whether judgment *nunc pro tunc* should be awarded.

**F. The trial court abused its discretion in reducing the award of attorney fees from the amount Smith requested.**

Following the trial, Smith requested attorney fees in the amount of $203,131 under Idaho Code sections 6-2105(1) and 6-2106(5), I.R.C.P. 54(d), and I.R.C.P. 54(e). The District objected to this request as excessive. Smith pointed to several other Whistleblower Act cases that had been heard and decided by the trial court, in which substantially higher hourly rates of attorney

---

[11] The District's brief on appeal states that it "[i]s thus necessary [sic] to enter a judgment *nunc pro tunc*." However, context indicates that the District meant the opposite. As noted, the District's argument that sovereign immunity precludes an award of post-judgment interest is incorrect as a matter of law. *Red Steer*, 101 Idaho at 100, 609 P.2d at 167.

fees than those sought by Smith had been awarded to successful litigants. Nevertheless, the trial court reduced attorney fees to the amount of $168,177, examining the I.R.C.P. 54(e)(3) factors and concluding that while the hours claimed were reasonable, the hourly fees for each attorney were not. It is not clear why the trial court found the hourly rate sought unreasonable in this case, yet higher hourly rates reasonable in others.

On appeal, Smith asserts that the trial court abused its discretion by reducing attorney fees in the way described. Smith argues that the trial court did not appreciate the difference between the attorney fees requested by a plaintiff's attorney and those requested by defense counsel. Smith also has continued to point to attorney fee awards in several Whistleblower Act cases heard by the same trial court; Smith argues that the trial court's substantially lower award in her case constitutes disparate treatment without proper explanation, amounting to an abuse of discretion because it is arbitrary and capricious. The District argues that the trial court did not abuse its discretion, and that the award of attorney fees was reasonable.

Because an award of reasonable attorney fees is within the discretion of the trial court, this Court examines "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018) (citation omitted). "When awarding attorney's fees, a district court must consider the applicable factors set forth in I.R.C.P. 54(e)(3) and may consider any other factor that the court deems appropriate." *Lettunich v. Lettunich*, 145 Idaho 746, 749–50, 185 P.3d 258, 261–62 (2008) (quoting *Hines v. Hines*, 129 Idaho 847, 855, 934 P.2d 20, 28 (1997)).

The trial court abused its discretion in its award of attorney fees. We recognize that the trial court identified that awarding attorney fees was a discretionary decision, and identified the factors in I.R.C.P. 54(e)(3) for its consideration. However, we do not believe the trial court acted consistently with these factors, or the stated purpose of the Whistleblower Act, in its decision to reduce the requested award of attorney fees.

As a preliminary matter, we note the comparison of the hourly rates of plaintiffs' counsel and defense counsel is like comparing apples and oranges, especially in a whistleblower case. Smith has pointed out that plaintiffs' attorneys "must charge much higher rates" such that comparing the hourly rate of plaintiffs' counsel and defense counsel is misplaced. The legislative

purpose of the Whistleblower Act is to protect whistleblowers, avoid public waste, and protect the integrity of government. *See* I.C. § 6-2101. Claims under the Whistleblower Act face significant uncertainty and the potential of complete failure.

The trial court's decision, even while purportedly considering I.R.C.P. 54(e)(3)(D) and (J), does not adequately explain why it chose to reduce the requested hourly rate from $400 to $325 given the legal experience of Smith's counsel. The trial court spent four pages in analysis, examining the awards it had given in similar cases (all of which resulted in higher hourly rates) before simply stating that the hourly rate of $400 was "not reasonable *in this case*." (Italics added.) However, the trial court did not explain *why* it was unreasonable. The trial court's findings are inconsistent with its other decisions in whistleblower cases involving less experienced counsel. A court abuses its discretion when in awarding attorney fees it does so arbitrarily and inconsistently with the requirements of Rule 54(e)(3). *H2O Envtl., Inc. v. Farm Supply Distribs., Inc.*, 164 Idaho 295, 300, 429 P.3d 183, 188 (2018). An award of attorney fees that is inconsistent with other awards made *by the same trial court* appears arbitrary absent an explanation as to why the requested attorney fees were unreasonable *in this case*. Accordingly, we vacate the trial court's award of attorney fees, and remand for reconsideration and explanation of why the trial court awarded higher hourly rates to less experienced counsel in similar cases.

### G. Smith is entitled to attorney fees on appeal, and is entitled to costs.

Smith has requested attorney fees on appeal under Idaho Code sections 6-2105(1) and 6-2106(5). The Idaho Appellate Rules allow for an award of attorney fees on appeal when such a claim is asserted as an issue presented in a party's first appellate brief. I.A.R. 41(a). Idaho Code section 6-2106(5) authorizes a court "rendering a judgment brought under" the Whistleblower Act to award "reasonable costs and attorneys' fees." Idaho Code section 6-2105(1) includes "reasonable attorneys' fees" in the definition of "damages." The Whistleblower Act provides a statutory basis for an award of attorney fees. Given the remedial nature of the statute, we construe the legislature's authorization of attorney fees to include those incurred in pursuing a meritorious appeal. *See Eller*, 165 Idaho at 156, 443 P.3d at 170. As a result, Smith is awarded her reasonable attorney fees on appeal.

Smith is also entitled to costs as a matter of right as the prevailing party. I.A.R. 40.

## IV. CONCLUSION

The trial court erred in rejecting the jury's award of front pay because there is a right to a jury trial on the issue of front and back pay under the Whistleblower Act. Accordingly, the trial court's reduction of front pay is reversed and the case is remanded with instructions that the jury award be reinstated. The trial court also erred in denying post-judgment interest on the judgment of back and front pay. Smith's request that this Court enter a judgment *nunc pro tunc* is declined; however, on remand the trial court is instructed to make a determination whether a judgment *nunc pro tunc* is appropriate as of the date of the jury's verdict.

The trial court's award of attorney fees is vacated and remanded for reconsideration in accordance with this opinion.

Smith is awarded attorney fees and costs on appeal as the prevailing party.

Chief Justice BURDICK, Justices BEVAN, MOELLER, and KIDWELL, J. Pro Tem CONCUR.